ODEGARD OUTDOOR
ADVERTISING, LLC,
Respondent,

v.

THE BOARD OF ZONING ADJUST-
MENT OF JACKSON COUNTY,
Missouri, Appellant.

No. SC 81487.

Supreme Court of Missouri,
En Banc.

Nov. 23, 1999.

Steven E. Mauer, Michelle M. Cawley, Kansas City, for Respondent.

Ronald L. Jurgeson, Sp. Asst. County Counselor, Lee's Summit, Jane McQueeny, Jackson County Counselor, Kansas City, for Appellant.

WILLIAM RAY PRICE, Jr., Chief Justice.

This case involves the denial of two variance applications for billboards. The applications were denied because the billboards did not comply with a zoning ordinance enacted after the billboards were established. We hold that the billboards are exempt from compliance as prior non-conforming uses under the zoning ordinance's express language.

## I.

Odegard Outdoor Advertising, LLC ("Odegard") owns four billboards in unincorporated Jackson County, Missouri. Two billboards are located side-by-side on the east side of U.S. 40 Highway and two are located side-by-side on the west side of U.S. 40 Highway. In 1992, the Jackson County director of public works ("director") notified Odegard that it was required to obtain, for the first time, a special use permit ("SUP") for the continued placement of the billboards. Odegard obtained three-year special use permits for the billboards on February 1, 1993.

On June 1, 1995, the new Jackson County unified development code ("UDC") went into effect. The UDC limited the gross area of the sign face of a billboard on a state secondary highway to 100 square feet and subjected billboards to certain setback regulations. Billboards that were double-faced, placed back-to-back, or of V-type construction were to be considered as one sign. The director counted each pair of Odegard's side-by-side billboards as one billboard.

In 1996, Odegard attempted to renew its special use permits. The director refused to issue new permits, determining that: 1) the two signs each exceeded the new sign face gross area limitation by 44 feet; and 2) the west side sign failed to comply with the governing setback regulations. Odegard then filed applications requesting temporary variances that would allow the continued placement of the billboards. On July 18, 1996, the Jackson County board of zoning adjustment ("BZA") issued decisions denying the requested variances and sustaining the Director's initial denial of the special use permits.

On July 25, 1996, Odegard was ordered to remove the billboards. On August 22, 1996, Odegard filed a petition for judicial review with the Jackson County Circuit Court. The circuit court reversed the decisions of the BZA and ordered that the billboards be allowed to remain in place, or alternatively, that Odegard be compensated for their removal. The judgment of the trial court is affirmed.

## II.

The right to own private property is a bedrock principle in American law. *See generally* Nichols on Eminent Domain section 5.01(1) – (4) (3d ed.1999) (discussing different intellectual theories that influenced early American views on property). The importance of this right is reflected in the federal and Missouri constitutional provisions that protect private property, even against taking by the government without just compensation. U.S. CONST. amend. V; Mo. CONST. art. I, section 26.

 The government may, however, regulate the use of private property through its police powers. *See Howe v. City of St. Louis*, 512 S.W.2d 127, 131 (Mo. banc 1974) ("Private property rights are not absolute. They are always subject to

the reasonable exercise of the police power."). Zoning ordinances may be enacted to protect property and building values, without compensation, under the theory that any diminishment in the land's value for a potential lost use is offset by the increased value of the land resulting from the zoning. This theory, however, is not applicable to an existing use of the property that would no longer conform to the new zoning. In such a circumstance a "taking" is inevitable because the use, called a nonconforming use,[1] constitutes a vested right. *Hoffmann v. Kinealy,* 389 S.W.2d 745, 753 (Mo. banc 1965). In that event, the zoning authority is faced with the choice of allowing the property owners to continue the nonconforming use or compensating the property owner for the value of the taken use. *City of Monett v. Buchanan,* 411 S.W.2d 108, 115 (Mo.1967).

### III.

The case before us is best resolved by identifying the legal status of the billboards at three points in time: 1) prior to the issuance of the special use permit; 2) after the issuance of the special use permit; and 3) after the adoption of the UDC in June of 1995.

■ The billboards at issue have been in their present location since at least 1982. Prior to 1993, Odegard was not required to have any type of permit to operate the billboards and the billboards were in compliance with all existing ordinances, statutes, and regulations. Prior to the issuance of the SUP, the billboards were lawful conforming uses.

■ Odegard's application for and receipt of the SUP in 1993 did not change this status. The BZA had no legal authority to condition Odegard's continued use of the billboards on acquiring the SUP at

that time, nor did it declare a taking of the billboards, nor did it attempt in any way to establish the amount of time that would be necessary for Odegard to realize the full economic value of the billboards. *See Missouri Rock, Inc. v. Winholtz,* 614 S.W.2d 734, 739 (Mo.App.1981); *State ex rel. Keeven v. City of Hazelwood,* 585 S.W.2d 557 (Mo.App.1979). There was simply no quid pro quo consideration to support such an argument. To hold otherwise would allow a property right to be altered merely by requiring a permit when none was previously required for a particular land use.

■ The adoption of the UDC by Jackson County in 1995 enacted a series of regulations with which Odegard's billboards did not comply. Their gross sign area was too large and they did not meet setback requirements. However, the UDC did not propose to take Odegard's signs in exchange for just compensation. Instead, the UDC expressly stated at section 24003.26.h.1, that: "Subject to the restrictions of this section, nonconforming uses that were otherwise lawful on the effective date of the UDC may be continued." Therefore, the UDC expressly allows for the billboards' continued placement as lawful, nonconforming uses after its adoption on June 1, 1995.

### IV.

By virtue of the UDC's section expressly allowing nonconforming uses, this case does not present an amortization issue, even though the BZA would like us to treat the SUP as an amortization technique. Therefore, this Court need not attempt to reconcile *Hoffmann v. Kinealy,* 389 S.W.2d 745 (Mo. banc 1965) and *University City v. Diveley Auto Body Co.,* 417 S.W.2d 107 (Mo. banc 1967).[2] The UDC

---

1. A "nonconforming use" is a use of land that lawfully existed prior to the enactment of a zoning ordinance, or an amendment to an existing zoning ordinance, that is maintained after the effective date of the ordinance or amendment even though the use is not in

compliance with the zoning restrictions applicable to the district in which it is situated. *See* 4 Ziegler, Rathkopf's The Law of Zoning and Planning section 51.01(1) (4th ed.1999).

2. In *University City v. Diveley Auto Body Co., supra,* we upheld a local billboard ordinance

does prohibit future expansions and places limits on repair and maintenance so as not to unreasonably prolong the structures' lives. Since the UDC does not prescribe a method that would allow an owner of a nonconforming use to recover the full economic value of the property, we need not determine whether a zoning ordinance might properly allow an amount of time for an owner to recover the economic value of a nonconforming use in lieu of compensation.

All concur.

requiring nonconforming signage to be brought into compliance or removed within three years, while two years earlier, in *Hoff-*

*mann v. Kinealy, supra,* we disapproved amortization of a nonconforming use of a city lot on which lumber was stored.