**David G. ROSE, Appellant,**

v.

**BOARD OF ZONING ADJUSTMENT
PLATTE COUNTY, Missouri et al,
Barbara Fulke, Edie Ballweg, L.J. At-
kison, Gene Blankenship, Chris Don-
nelli, Respondents.**

**No. WD 59529.**

Missouri Court of Appeals,
Western District.

Dec. 18, 2001.

As Modified Jan. 29, 2002.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Jan. 29, 2002.

Application for Transfer Denied
March 19, 2002.

---

**1.** All statutory references are RSMo 2000 un- less otherwise noted.

508

**510**

Kelly C. Tobin, Kansas City, for appellant.

John R. Shank, Jr., Kansas City, for respondents.

Before: SPINDEN, C.J,
BRECKENRIDGE and HARDWICK, JJ.

LISA WHITE HARDWICK, Judge.

The Platte County Board of Zoning Adjustment found David Rose in violation of the county's Weed Ordinance for allowing uncultivated weeds to grow more than twelve inches high on his residential property. Rose filed a petition in Platte County Circuit Court seeking declaratory and injunctive relief from enforcement of the Weed Ordinance. After hearing, the court denied all requested relief. Rose appeals, raising four constitutional claims of error. We affirm in part and reverse and remand in part.

### Facts and Procedural Background

In August 1976, David Rose purchased a home in the Walnut Creek residential subdivision of Parkville, Missouri in Platte County. Rose, who has a degree in wildlife management and ten years of work experience as a wetlands manager with the United States Fish and Wildlife Service, decided to transform the cut-grass yard surrounding his home into a natural woodlands area. He planted additional trees, shrubs and flowering plants and allowed the natural vegetation in the yard to grow. Rose did not trim or mow the yard. Over the years, the vegetation matured into a wooded state.

In 1991, the uncultivated condition of Rose's yard led to an investigation and complaints by the Platte County codes enforcement officer, Gail Cantu. Based on Cantu's complaints, the county prosecutor filed criminal charges against Rose for violating the Platte County Nuisance Ordinance. The charges, filed in Platte County Circuit Court, alleged that Rose violated the ordinance by allowing noxious weeds (such as poison ivy and oak) to grow on his property, by maintaining other weeds and wooden boards conducive to breeding insects and rodents, and by having a decaying wooden deck in a dangerous condition. A jury acquitted Rose on all charges.

In 1992, 1996 and 1998, Cantu raised similar complaints against Rose under the Nuisance Ordinance. Each time, the county prosecutor declined to pursue further criminal charges for Rose's alleged violations of the ordinance.

On May 20, 1999, the Platte County Commission replaced the Nuisance Ordinance with new zoning regulations known as the "Weed Ordinance." The new ordinance[1] requires the removal of "weeds" from any parcel of land not zoned for agricultural use. The ordinance defines "weeds" as:

(a) dense growth of wild shrubbery, trees with a trunk that is less than 1½" in diameter measured at a height of 42" above grade, brush and/or woody vines, regardless of height, having stems or trunks less that four inches in diameter;

---

[1]. The record on appeal offers no explanation as to why the Nuisance Ordinance was replaced or the differences between the Nuisance Ordinance and the Weed Ordinance. The Nuisance Ordinance was not included in the record on appeal.

(b) noxious or poisonous plants, including but not limited to poison ivy, poison oak or poison sumac, at any height or state of maturity;

(c) plants which bear or may bear seeds of a downy or winged nature;

(d) plants and/or indigenous grasses which attain such large growth as to become, when dry, a fire menace to adjacent improved property;

(e) vegetation and/or grasses which, because of height, has a blighting effect on the neighborhood;

Any such vegetation or grasses shall be presumed to be blighting if they exceed twelve inches in height.

The term "weed" shall not include cultivated trees, plants, bushes, shrubbery of any height nor stock which has been purchased at a nursery.

Platte County Zoning Reg., Art. III, § 21. If a property owner fails to remove weeds after being notified of a violation, the ordinance provides that the County may have the weeds cut and assess the "costs of abatement" against the violator. The ordinance also provides that a property owner's failure to remove weeds upon receipt of a notice of violation is a misdemeanor offense pursuant to § 64.295 RSMo.[2]

On May 25, 1999, five days after enactment of the Weed Ordinance, Cantu inspected Rose's property to determine its compliance with the new ordinance. Cantu sent a June 1, 1999 letter notifying Rose that the weeds on his property violated the new ordinance and must be removed in 30 days. Rose took no action in response to the letter.

On July 8, 1999, Cantu sent a "Stop Order" to Rose, warning that his failure to correct the violations of the Weed Ordinance would constitute a misdemeanor pursuant to state law. The Order stated that the county would exercise its options to institute criminal proceedings in state court or remove the weeds and assess costs, if Rose took no action within ten days. Rose did not respond to the Order.

On August 5, 1999, Cantu notified Rose by letter that a hearing would be held on August 16, 1999, regarding his violations of the Weed Ordinance. The letter stated that, following the hearing, the Platte County Planning and Zoning Director could declare the weeds in Rose's yard as a nuisance and have the weeds cut and removed if Rose failed to correct the violation within fourteen days. The letter did not indicate any further intention by the County to pursue misdemeanor charges against Rose, and no criminal charges have been filed against him for violation of the Weed Ordinance.

The August 16 hearing was delayed until August 24, 1999. Rose and his counsel were present at the hearing, which was conducted by the Platte County Director of Planning and Zoning. After evidence was heard, the Director found Rose in violation of the Weed Ordinance and ordered removal of the weeds, either voluntarily by Rose or by the County pursuant to the ordinance's abatement provisions.

Rose appealed the Director's decision to the Platte County Board of Zoning Adjustment ("BZA") on September 20, 1999, and simultaneously applied to the BZA for a variance to the Weed Ordinance based on the "prior nonconforming use" of his property. The application requested that Rose be exempted from the Weed Ordinance because the condition of his property "existed for a substantial period of time prior to enactment" of the new ordinance. In support of his request, Rose cited Article VI, Section 2 of the Platte County Zoning Regulations, which states:

**2.** All statutory citations are to the Revised Missouri Statutes (2000).

A nonconforming use of land, existing at the time of adoption of [the zoning regulations], may be continued, provided however:

1. Said nonconforming use may not be extended or expanded;

2. If said nonconforming use or any portion thereof is discontinued for a period of six (6) months, any future use of the land shall be in conformity with the applicable zoning district provisions for that location.

After a December 1, 1999 hearing on the appeal and variance request, the BZA concluded that Rose violated the Weed Ordinance, in that "vegetative matter located on [his] property was more than 12" high, had not been purchased at a nursery, and was not and had not been cultivated." The BZA also denied Rose's request for a variance, finding that such variance "would be opposed to the general spirit and intent of the [Stop] Order and that it would adversely affect the public health, safety, morals, order, convenience, property or general welfare." Voting 5–0 to deny the appeal and variance, the BZA did not directly address Rose's contention that his prior nonconforming use of the property exempted him from enforcement of the Weed Ordinance.

On December 28, 1999, Rose filed a three-count Petition against the BZA seeking injunctive and declaratory relief to preclude enforcement of the Weed Ordinance. Counts I and II of the Petition sought judicial review of the BZA decision pursuant to the Missouri Administrative Procedure Act, § 536.010. Count III sought a declaratory judgment that: 1) Rose had a vested right to continue a prior non-conforming use of his property; 2) that the BZA's decision was arbitrary, capricious, and unsupported by competent and substantial evidence; and 3) the Weed Ordi-nance was unconstitutional. The trial court heard evidence and denied all of Rose's claims in a judgment entered November 6, 2000. Rose appeals.

### Issues on Appeal

Rose brings four points of error on appeal: 1) the Weed Ordinance is unconstitutionally vague; 2) the Weed Ordinance unconstitutionally delegates legislative authority to a private entity; 3) the variance request was improperly denied in light of Rose's prior nonconforming use of his property; and 4) enforcement of the Weed Ordinance violated Rose's constitutional rights against double jeopardy.

### Point I: Vagueness

■ Rose challenges the Weed Ordinance as unconstitutionally vague because it failed to provide adequate notice to the public and sufficient standards for enforcement. The trial court rejected this argument, finding:

> The Platte County Weed Ordinance is not unconstitutional in that the ordinance provides sufficient specificity and notice, to a person in Plaintiff's circumstances, that growing the type of vegetation he describes as a "natural woodland area" in his yard in a high density residential area is not permitted. Similarly, the Platte County Weed Ordinance is sufficiently clear to provide guidance to the officer implementing it to avoid ipso facto arbitrary and capricious application.

We must affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

■ The "void-for-vagueness" doctrine derives from the Due Process Clauses of our federal and state constitutions.

U.S. CONST. amend. XIV; Mo. CONST. art. I, § 10. If the enforcement of a statute could result in the deprivation of liberty or property, the Due Process Clause requires that the statutory language "be worded with precision sufficient to enable reasonable people to know what conduct is proscribed so they may conduct themselves accordingly." *Fitzgerald v. City of Md. Heights,* 796 S.W.2d 52, 55 (Mo.App. E.D.1990). The statute must also define offensive conduct in a manner that does not encourage arbitrary and discriminatory application. *AG Processing, Inc. v. South St. Joseph Indus. Sewer Dist.,* 937 S.W.2d 319, 322 (Mo.App. W.D. 1996).

■■■ Statutes are presumed valid and will be upheld unless they clearly contravene constitutional provisions. *Perez v. Mo. State Bd. of Registration for Healing Arts,* 803 S.W.2d 160, 165 (Mo.App. W.D. 1991). Upon a challenge for unconstitutional vagueness, we view the statutory language as it applies to the facts at hand. *Id.* Language which reasonable people can understand is not impermissibly vague merely because it requires interpretation on a case-by-case basis. *Fitzgerald,* 796 S.W.2d at 55.

Rose argues that the Weed Ordinance is unconstitutionally vague with regard to the definition of "weeds." The ordinance defines weeds as:

(a) dense growth of wild shrubbery, trees with a trunk that is less than 1½" in diameter measured at a height of 42" above grade, brush and/or woody vines, regardless of height, having stems or trunks less that four inches in diameter;

(b) noxious or poisonous plants, including but not limited to poison ivy, poison oak or poison sumac, at any height or state of maturity;

(c) plants which bear or may bear seeds of a downy or winged nature;

(d) plants and/or indigenous grasses which attain such large growth as to become, when dry, a fire menace to adjacent improved property;

(e) vegetation and/or grasses which, because of height, has a blighting effect on the neighborhood;

Any such vegetation or grasses shall be presumed to be blighting if they exceed twelve inches in height.

The term "weed" shall not include cultivated trees, plants, bushes, shrubbery of any height nor stock which has been purchased at a nursery.

Platte County Zoning Reg., Art. III, § 21. Rose argues that the ordinance permits County officials to make arbitrary decisions as to what constitutes a weed because descriptive terms in the ordinance— such as "blighting effect," "dense growth," "cultivated," and "noxious and poisonous plants" are not defined. He points out our prior holding that an aesthetics ordinance must provide "explicit definition" and "adequately circumscribe the process of administrative decision." *City of Independence v. Richards,* 666 S.W.2d 1, 9–10 (Mo.App. W.D.1983). Otherwise, the ordinance "posits a fickle standard of regulation ... and fails the test of certainty and definiteness required of such enactments." *Id.* at 8.

In *City of Independence v. Richards,* we considered a vagueness challenge to an ordinance that prohibited persons from allowing "refuse to accumulate or remain upon such premises to an extent or in such manner as to be unsightly, annoying." *Id.* at 4. We found the ordinance "void for vagueness and uncertainty" because the standards of "unsightly" and "annoying" were undefined and unexplained contextually, and the words alone conveyed "no determinable criterion." *Id.* at 11.

■ In contrast, Platte County's Weed Ordinance offers a very detailed definition of the term "weeds" and uses language that enables a reasonable person to understand what is prohibited. The specific words about which Rose complains are descriptive phrases that merely provide further guidance as to the types of vegetative growth and circumstances that may violate the ordinance. The phrases help to provide context for the ordinance by identifying specific situations that may fall within the definition of "weeds." The definition is worded with sufficient precision that it does not encourage arbitrary and discriminatory application. As such, even though all of its definitional terms are not further explained, the sum total of the ordinance provides a clear context for understanding and application, sufficient to avoid a challenge for vagueness. *City of Independence*, 666 S.W.2d at 11.

Applying the Weed Ordinance to the facts of this case, it is not difficult to determine that the condition of Rose's property constituted a violation of the ordinance. The evidence presented to the BZA and the trial court showed that the vegetative growth on Rose's property was more than 12 inches high, had not been purchased at a nursery, and had not been cultivated, rather it was allowed to grow naturally without mowing or trimming. There was nothing vague or ambiguous about the ordinance's weed definition that encouraged Platte County to arbitrarily or capriciously enforce it against Rose. Point I is denied, as we find no constitutional defect in the language of the weed ordinance as applied in this case.

**Point II: Improper Delegation of Authority**

■ Rose argues the Weed Ordinance "impermissibly delegates legislative authority" to nurseries by allowing them to determine what constitutes a weed. Article III, Section 1 of the Missouri Constitution vests legislative power in the General Assembly. Although such legislative power may not be delegated, the General Assembly can authorize officers, boards and commissions to promulgate rules and regulations that carry out legislative purposes. *Ex parte Williams*, 345 Mo. 1121, 139 S.W.2d 485, 491(Mo.), cert. Denied, 311 U.S. 675, 61 S.Ct. 42, 85 L.Ed. 434 (1940). Those rules and regulations constitute the "exercise [of] police power[s]" that "cannot be [further] delegated to private persons." *Prof'l Houndsmen v. County of Boone*, 836 S.W.2d 17, 21 (Mo.App. W.D.1992) (*quoting State ex rel. J.A. Rouveyrol v. Donnelly*, 365 Mo. 686, 285 S.W.2d 669, 674 (1956)). Based on this body of law, Rose challenges the Weed Ordinance as unconstitutional because it allows private entities, i.e. plant nurseries, to exercise police powers by determining the meaning of "weeds" based on the types of plants the nurseries choose to carry as stock.

■ A constitutional question is waived unless raised in the trial court at the earliest opportunity. *Fisher v. State Highway Comm'n of Mo.*, 948 S.W.2d 607, 611 (Mo. banc 1997). Rose raised several constitutional challenges in his verified Petition filed in the trial court, but he failed to raise any issue pertaining to an improper delegation of legislative authority under Article III, Section 1 of the Missouri Constitution. This issue was neither presented at trial nor in Rose's post-trial Motion for Reconsideration. Point II is denied, as Rose raises this constitutional challenge for the first time on appeal and failed to preserve it for review.

**Point III: Prior Nonconforming Use**

Rose argues that the Weed Ordinance cannot be enforced against him due to the prior nonconforming use of his property in a naturally wooded state since 1976. He

relies on Article VI, Section 2 of the Platte County Zoning Regulations, which expressly provide that a nonconforming use of land may be continued after the adoption of new zoning regulations. Rose further relies on constitutionally-based caselaw, recognizing that "[a] nonconforming use is a vested property right which zoning ordinances may not abrogate." *Mo. Rock, Inc., v. Winholtz*, 614 S.W.2d 734, 739 (Mo. App. W.D.1981).

The BZA acknowledges "that Missouri law requires that zoning ordinances permit continuation of a nonconforming use in existence at the time of an ordinance's enactment as long as such use is *maintained.*" However, the BZA argues that Rose failed to maintain his nonconforming use of the property and, instead, "expanded" it by allowing the vegetation to "become more dense and overgrown subsequent to the passage of the Weed Ordinance."

 With regard to zoning decisions, an appellate court reviews the findings and conclusions of the BZA and not the judgment of the trial court. *State ex rel. Teefey v. BZA*, 24 S.W.3d 681, 684 (Mo. banc 2000). The scope of review is limited to determination of whether the BZA's action is supported by competent and substantial evidence upon the whole record or whether it is arbitrary, capricious, unreasonable, unlawful or in excess of its jurisdiction. *Id.* In · determining whether substantial evidence existed to support the BZA's decision, we must view the evidence and all reasonable inferences in a light most favorable to the decision. *Id.*

 The right to own private property is a bedrock principal of American law, as reflected in the federal and state constitutional provisions that protect private property against taking, even by the government, without just compensation. U.S.

CONST. amend. V; MO. CONST. Art. I, § 26. Although government may regulate the *use* of private property through zoning ordinances, an unconstitutional taking can occur when an ordinance is enforced against a property owner's prior non-conforming use of his land. *Odegard Outdoor Adver. v. Bd. of Zoning Adjustment*, 6 S.W.3d 148, 149–150 (Mo. banc 1999).

 The term "nonconforming use" means a use of land which lawfully existed prior to the enactment of a zoning ordinance and which is maintained after the effective date of the ordinance even though not in compliance with the new use restrictions. *Mo. Rock, Inc.*, 614 S.W.2d at 739. Zoning ordinances must permit continuation of nonconforming uses to avoid violation of constitutional provisions preventing the taking of private property without compensation. *Id.*

 On September 20, 1999, Rose sought exemption from the Weed Ordinance by appealing to the BZA and seeking a variance based on the prior nonconforming use of his property in a naturally wooded condition. The BZA heard evidence on the application and issued a written decision denying the appeal and variance on December 1, 1999. The decision states:

> [T]he Board finds that the granting of movant's application for a variance ... would result in substantial detriment to the public good and would impair the intent and purpose of [the Weed Ordinance]. The Board also finds that peculiar and exceptional difficulties or conditions of the piece of property, as related to an application for variance, do not exist.

The BZA's written findings indicate that it considered Rose's request in the context of a hardship variance pursuant to its zoning

authority set forth in § 89.090(3) R.S.Mo. This statutory provision allows the BZA to "vary or modify" the application of any zoning ordinance upon a showing of "practical difficulties or unnecessary hardship in . . . carrying out the strict letter of such ordinance." § 89.090(3). The statute further provides that the variance may be granted "so that the spirit of the ordinance shall be observed, public safety and welfare secured and substantial justice done." *Id.*

Rose's appeal and variance request was not based on the hardship provisions of § 89.909(3), rather it asserted constitutional grounds for his exemption from the Weed Ordinance. He argued that the ordinance could not be enforced against his prior use of the property as a naturally wooded area, because that would amount to an unconstitutional "taking" of his property without just compensation. Rose asserted a vested property right that, if proved, presented the BZA with only two options: 1) allowing Rose to continue his nonconforming use of the property, or 2) compensating Rose for the value of the taken use. *Odegard*, 6 S.W.3d at 150.

To obtain relief under this constitutionally-based variance theory, Rose was required to prove that his nonconforming use existed prior to enactment of the Weed Ordinance and was maintained, but not expanded or extended, thereafter. *Id.;* Platte County Zoning Reg., Art. VI, § 2. Rose and the Platte County codes enforcement officer presented conflicting evidence and arguments to the BZA regarding whether Rose maintained, expanded or extended the woodlands appearance of his property after the Weed Ordinance was enacted. Despite the presentation of this issue at the hearing, the BZA's decision failed to make any findings or rulings on the issue of Rose's non-conforming use. Instead, the BZA applied the incorrect standard under § 89.090(3) and determined that Rose was not entitled to a variance based on hardship. The BZA erred in this regard, as the issue of hardship was never presented in Rose's appeal and variance application.

Rose is entitled to a ruling from the BZA regarding the asserted existence of his vested property rights. The BZA's decision was unlawful to the extent that it failed to apply the proper constitutional standards in determining Rose's entitlement to relief. We reverse and instruct the trial court to remand to the BZA for determination of whether Rose had a prior nonconforming use of his property and, if so, whether he should be allowed to continue that use or be compensated for the value of the taken use.

### Point IV: Double Jeopardy

In 1991, Rose was criminally charged and tried for alleged violations of the Nuisance Ordinance, predecessor to the Weed Ordinance at issue in this litigation. The charges alleged that Rose allowed noxious weeds to grow on his property, and that he maintained decaying wooden materials in a dangerous condition. Rose was acquitted by a jury of those charges. Eight years later, on May 25, 1999, he was notified of administrative proceedings against him under the new Weed Ordinance. The BZA ultimately found Rose in violation of the new ordinance and ordered abatement, which could include an assessment of costs for the county's removal of the weeds on Rose's property.

Rose now argues that in light of his 1991 acquittal, he cannot be prosecuted under the new ordinance for the same type of weed offense without being subject to double jeopardy, a constitutional violation. The trial court rejected this claim, holding that double jeopardy did not apply because the Weed Ordinance's abatement procedure is a "civil administrative action" (as opposed

to a criminal action) and because the condition of Rose's property had changed since 1991, such that he was not being prosecuted for the same offense. We must affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy,* 536 S.W.2d at 32.

▇▇▇▇ The Double Jeopardy Clause prohibits a subsequent prosecution for the same offense after acquittal. *United States v. Halper,* 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989); U.S. CONST. amend. V; MO. CONST. art. I, § 19. Whether a proceeding is labeled as "civil" or "criminal" is not of paramount importance in determining whether double jeopardy attaches. *State v. Mayo,* 915 S.W.2d 758, 760 (Mo. banc), cert. denied, 519 U.S. 813, 117 S.Ct. 61, 136 L.Ed.2d 23 (1996) (citing *Halper,* 490 U.S. at 447). "[T]he determination of whether a civil penalty is considered *punishment* for purposes of double jeopardy analysis depends upon whether the penalty is remedial or punitive in nature." *In Re Caranchini,* 956 S.W.2d 910, 914 (Mo.banc), cert. denied, 524 U.S. 940, 118 S.Ct. 2347, 141 L.Ed.2d 717 (1998). This determination requires a "particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve." *Mayo,* 915 S.W.2d at 760. To be considered punishment, the goal of the penalty must be the "twin aims of retribution and deterrence." *Id.*

While it is clear that the BZA hearing and subsequent trial court action did not constitute criminal proceedings as did Rose's 1991 trial, we must nonetheless determine whether the abatement remedy ordered by the BZA is punitive or remedial in nature. Such a determination is not made from Rose's perspective, as even wholly remedial sanctions may "carry the

sting of punishment" for those being sanctioned. *Mayo,* 915 S.W.2d at 762.

As outlined in the Weed Ordinance, the abatement procedure focuses on the removal of weeds designated as a nuisance. The procedure allows the property owner to cut and remove within 14 days of receiving an abatement order, after which time the County may have the weeds cut and removed. The County is then permitted to notify and demand payment from the property owner of the costs of the removal, including an administrative fee of $50.00. If the property owner fails to pay within 30 days of such notice, the costs shall be certified to the county collector for tax assessment as a lien on the property.

▇▇ Although the Weed Ordinance permits criminal sanctions, the County opted not to pursue criminal charges against Rose that could have led to a misdemeanor conviction. The County limited its remedy to the abatement procedures, which sought only to secure Rose's compliance with the ordinance's provisions and recover the enforcement costs. As such, the "penalty" imposed against Rose was remedial because it neither sought to deter him or seek retribution. Rose's constitutional rights against double jeopardy were not violated, in that the "overarching purpose" of the abatement order was not punishment, but elimination of the weeds declared a nuisance. *Mayo,* 915 S.W.2d at 762.

Rose's double jeopardy claim also fails because he has not shown that the Weed Ordinance proceedings against him were for the "same offense" that he was criminally prosecuted for under the Nuisance Ordinance. *U.S. v. Dixon,* 509 U.S. 688, 697, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993). The record on appeal is devoid of any documents or information regarding the text of the Nuisance Ordinance or the specific charges against Rose in the 1991 criminal case. Full review of the double

jeopardy claim is precluded by this omission, as we have no basis to determine whether the essential elements of Rose's offense under the Weed Ordinance are the same as those for which he was previously prosecuted. *Id.* at 696.

Point IV is denied.

### Conclusion

The trial court's judgment is affirmed with regard to the constitutional issues raised in Points I, II and IV. We reverse on Point III and instruct the trial court to remand to the BZA for a determination of whether Rose had a prior non-conforming use of his property and, if so, whether he should be allowed to continue that use or be compensated by the county for the value of the use taken by enforcement of the Weed Ordinance.

All concur.