

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | |
|---|---|
| WCT & D, LLC, ) | |
| ) | |
| Respondent, ) | |
| ) | WD78207 |
| v. ) | |
| ) | OPINION FILED: |
| ) | December 8, 2015 |
| CITY OF KANSAS CITY, MISSOURI, ) | |
| ) | |
| Appellant. ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable Bryan E. Round, Judge**

**Before Division Three:** Joseph M. Ellis, Presiding Judge, and
Karen King Mitchell and Anthony Rex Gabbert, Judges

WCT & D, LLC d/b/a Cashew (hereinafter "Cashew") appeals the City of Kansas City's denial of Cashew's request to expand its liquor license. The Circuit Court of Jackson County reversed and ordered City to issue the expanded license. "On appeal, we review the administrative agency's decision rather than the judgment of the circuit court; however, we affirm or reverse the circuit court's judgment based upon our review of the administrative decision." *Kelly v. Mo. Dep't of Soc. Servs.*, 456 S.W.3d 107, 110 (Mo. App. W.D. 2015). We reverse the circuit court.

**Facts**

Cashew is a restaurant and bar operating in Kansas City. Currently, Cashew has a liquor license allowing it to serve alcoholic beverages on the first and second floor of its four-story building. Cashew filed a request with City to expand its license to allow alcohol on the third and fourth floors, as well as its rooftop patio.[1]

City's liquor licensing process provides that, once the request was initiated, Cashew had ninety days[2] to obtain consent for the expansion from a majority of the landowners and tenants within a 250-foot radius of the building ("eligible consenters"). City determined the number and identity of the eligible consenters through a record search, generated a consent form specific to each eligible consenter, and provided the consent forms and instructions for obtaining consents and abstentions to Cashew. In this case, there were twenty eligible consenters, meaning that, if there were no abstentions, Cashew would have to obtain eleven consents.

Eligible consenters express their consent by filling out and signing the consent form. If the eligible consenter is an entity, the individual signing the form must acknowledge that he or she is authorized to sign on behalf of the entity. Eligible consenters may also abstain from the process, by filling out a consent form and checking a box indicating that the property owner wishes to abstain. If the eligible consenter abstains, that eligible consenter is eliminated from the pool of eligible consenters from which the applicant must obtain consents, potentially lowering the number of consents required.

On the last day to obtain consents, Cashew turned in twelve consent forms. Ten of the forms were consents and two were abstentions. The consent forms for the abstentions, which

---

[1] Cashew has since abandoned its request to expand to the rooftop and is no longer pursuing it as part of this appeal.

[2] The ordinance allows for a forty-five-day period, followed by an extension of an additional forty-five days, which Cashew was granted. KANSAS CITY, MO., CODE § 10-214(b) (2015).

were from Assurant Employee Benefits, did not contain a signature.[3] They were accompanied by a purported email exchange between Cashew and John Hall from Assurant. The email from Cashew to Hall stated, "I know you didn't want to sign [the consent forms] because they are 'consent' forms[. But] I need to clarify . . . that you did fill them out, and Assurant does indeed want to be removed from voting on [abstain from] . . . Cashew's liquor license expansion." A reply from Hall states, "That is correct, Assurant wants to be removed from voting. Assurant is abstaining from voting."

City denied Cashew's application. In a letter, City indicated that, while Cashew had "submitted two consent forms to be counted as abstaining from the consent process, neither of the forms had been signed by the property owner as required" by ordinance. Accordingly, the application was denied because Cashew "did not submit consent forms . . . that had been signed . . . by a majority of eligible consenters."

Cashew appealed to the Liquor Control Review Board. Following a hearing, the Board upheld the denial, determining that Cashew "failed to furnish timely signed consent forms from Assurant indicating the decision to abstain from the consent process."

Cashew appealed the Board's decision to the Circuit Court of Jackson County, which reversed the Board's decision, holding that the email from Hall constituted an electronic signature and that the consent form was unconstitutionally vague. City appealed from that ruling.

**Standard of Review**

"On appeal from a circuit court's review of an [administrative] decision, this [c]ourt reviews the [Board]'s decision, not the judgment of the circuit court." *Prescott v. Mo. Dep't of*

---

[3] Apparently because it owned multiple lots in the area surrounding Cashew, Assurant was identified as a consenter twice. The parties agree that Assurant is appropriately treated as two separate eligible consenters for purpose of this process.

*Soc. Servs.*, 464 S.W.3d 560, 565 (Mo. App. W.D. 2015).[4] "'In reviewing the [Board]'s decision, the [c]ourt may not determine the weight of the evidence or substitute its discretion for that of the administrative body; the [c]ourt's function is to determine primarily whether competent and substantial evidence upon the whole record supports the decision, whether the decision is arbitrary, capricious, or unreasonable, and whether the [Board] abused its discretion.'" *Id.* (quoting *Psychcare Mgmt., Inc. v. Dep't of Soc. Servs.*, 980 S.W.2d 311, 312 (Mo. banc 1998)). Questions of law are reviewed *de novo*. *Albanna v. State Bd. of Registration for Healing Arts*, 293 S.W.3d 423, 428 (Mo. banc 2009).

If there is an issue regarding the constitutional validity of an ordinance, which the Board does not review, we review the decision of the circuit court on the constitutional issue, and our standard of review "is the same as in any other court-tried case." *Psychiatric Healthcare Corp. of Mo. v. Dep't of Soc. Servs.*, 100 S.W.3d 891, 899 (Mo. App. W.D. 2003). The circuit court will be affirmed unless it "'erroneously declares the law, or . . . erroneously applies the law.'" *Id.* (quoting *State ex rel. Robinson v. Office of Attorney Gen.*, 87 S.W.3d 335, 338 n.4 (Mo. App. W.D. 2002)). Questions of law are reviewed *de novo*. *Id.*

## Analysis

Cashew asserts two points of reversible error by the Board: (1) its finding that the abstentions from Assurant were not signed, because the email from John Hall was a sufficient digital signature; and (2) its determination that the abstention required a signature because the ordinance, through the form that City provided to obtain consents and abstentions, was impermissibly vague in not making it clear that a signature was required.

---

[4] Where, as here, a circuit court reverses an administrative decision, the party aggrieved by the circuit court's decision files the notice of appeal, but, "the party aggrieved by the agency decision shall file the appellant's brief." Rule 84.05(e) (2015).

## I. The email was not an electronic signature.

Cashew points out that "[t]he email from John Hall . . . included a signature line for Mr. Hall" and, thus, concludes that this was "a digital signature," which "constitutes a valid signature" for all purposes under Missouri law. The evidence does not support this claim.

Missouri has adopted the Uniform Electronic Transactions Act ("UETA"). § 432.200[5] ("Sections 432.200 to 432.295 shall be known and may be cited as the 'Uniform Electronic Transactions Act'."). The UETA provides that "[a] record or signature shall not be denied legal effect or enforceability solely because it is in electronic form." § 432.230.1.

What Cashew fails to acknowledge is that the UETA does not apply to this transaction. The UETA "appl[ies] only to transactions between parties each of which has agreed to conduct transactions by electronic means." § 432.220.2. The UETA "requires the [tribunal] to examine the 'context and surrounding circumstances, including the parties' conduct' in determining whether the parties agreed to conduct transactions by electronic means." *Crestwood Shops, L.L.C. v. Hilkene*, 197 S.W.3d 641, 653 (Mo. App. W.D. 2006) (quoting § 432.220.2).

Here, the parties engaged in the relevant transaction are Assurant and City. There was sufficient evidence for the Board to conclude that City had not agreed to communicate by electronic means. City provided Cashew with hard-copy forms to use in obtaining consent from Assurant and other eligible consenters. The manager of the division responsible for City's liquor licensing testified that, in the ten years he had been with the division, City had never accepted a consent form without a signature directly on the form. Cashew offered no evidence that City had ever expressed a willingness to conduct these transactions electronically or that City had previously accepted electronic signatures. The evidence supports the Board's finding that City

---

[5] All statutory citations are to the Revised Statutes of Missouri 2000, as supplemented, unless otherwise noted.

accepts only physically "signed consent forms." Accordingly, City has not "agreed to conduct transactions by electronic means," as required by § 432.220.2, rendering the UETA inapplicable. *See, e.g., Crestwood*, 197 S.W.3d at 652-53 (Where one party "makes her offer [in an email] and states that she is available only through email" and the other party accepts the offer by responding to the email, "[t]his is substantial evidence that the parties agreed to transact business via email.").

Even if City had agreed to accept electronic filings in the liquor licensing process, the evidence does not support Cashew's contention that Hall's name appearing at the bottom of his email unequivocally qualifies as an electronic signature sufficient to satisfy the UETA. Under § 432.240.1, "[a]n electronic record or electronic signature is attributable to a person if it was the act of the person." "The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable." *Id.*

The "person" at issue here is Assurant, which provided no witness or testimony. There was no evidence at the hearing regarding Assurant's security procedures, that Hall was authorized to bind Assurant in this matter, or that Hall intended the name at the bottom of his email to serve as a signature (as opposed to his name simply appearing at the bottom of every email he sends). Indeed, the evidence here is in stark contrast to Cashew's lone cited authority, where there was "overwhelming evidence that . . . [the] e-mails are authentic and that the information contained in them was intended by each to accurately reflect their communications with the other." *Int'l Casings Grp., Inc. v. Premium Standard Farms, Inc.*, 358 F. Supp. 2d 863, 873 (W.D. Mo. 2005). In *International Casings*, there was no dispute that both individuals had authority to bind their respective companies; they testified under oath that they sent the emails at

6

issue; and their testimony made it "clear that [they], by hitting the send button, intended to presently authenticate and adopt the content of the e-mails as their own writing." *Id*. at 870, 873, 873 n.13.

All of this is absent here, where Cashew is able to point only to a name at the bottom of an email. Under Cashew's theory, any automated "signature block" would serve as a legal signature for all purposes, universally binding senders regardless of intent. But under the UETA, an "[e]lectronic signature" must be "executed or adopted by a person with the *intent to sign* the record." § 432.205(8) (emphasis added). While the evidence presented may have also supported a finding that Assurant had electronically signed the abstention through its representative, Hall, we are not convinced that this is "'the rare case when the [agency's decision] is contrary to the overwhelming weight of the evidence.'" *Peer v. Mo. Bd. of Pharmacy*, 453 S.W.3d 798, 806 (Mo. App. W.D. 2014) (quoting *Albanna*, 293 S.W.3d at 428).

The point is denied.

**2.      Neither the ordinance nor the consent form are impermissibly vague.**

Cashew next argues that the Board should have granted its application "because the form utilized to obtain the agreement of [eligible consenters] was impermissibly vague in that it did not make it clear that a written signature was required for electing to formally abstain from the process." We disagree.

First, it is not clear precisely what Cashew is challenging—the ordinance or the form. Cashew's argument section clearly relies on the "void-for-vagueness doctrine," which Cashew correctly notes arises under the Due Process Clause of the Constitution and requires that ordinances "'be worded with precision sufficient to enable reasonable people to know what conduct is proscribed so they may conduct themselves accordingly.'" (quoting *Rose v. Bd. of*

7

*Zoning Adjustment Platte Cty.*, 68 S.W.3d 507, 514 (Mo. App. W.D. 2001)). Cashew's only cited authority, *Rose*, involves a facial challenge to an ordinance. 68 S.W.3d at 512. While Cashew initially argues that City's ordinance has been "rendered impermissibly vague," it then reverses course, arguing that "the ordinance itself pass[es] constitutional muster," and that, "[t]aken at face value[,] the ordinance [is] clear."

We agree that the ordinance is not unconstitutionally vague. The ordinance makes it perfectly clear that an eligible consenter must sign the consent form when it abstains:

> If an eligible consenter chooses to abstain from giving [its] consent, [it] will not be included in the total number of eligible consenters for which the applicant must obtain consents; however, *the applicant must furnish a signed consent form* from the [eligible consenter] indicating that [it has] chosen to abstain from the consent process.

KANSAS CITY, MO., CODE § 10-214(b) (2015) (emphasis added). It is difficult to imagine how the ordinance could more clearly state that Cashew was required to provide "a signed consent form" from Assurant. "[T]he sum total of the ordinance provides a clear context for understanding and application, sufficient to avoid a challenge for vagueness." *Rose*, 68 S.W.3d at 514.

Cashew's argument seems to be that, "[e]ven if the ordinance is properly drafted[,] it can be rendered impermissibly vague if it is vague, arbitrary[,] or discriminatory *as applied*." (Emphasis added.) And, specifically, that the form used by City to obtain consents and abstentions is itself vague, thus making the ordinance vague in its application. Cashew cites *Rose* as its sole support for this argument. But again, *Rose*, which reviewed only a facial challenge to the validity of an ordinance, neither stated nor implied that an otherwise valid ordinance can be rendered unconstitutional by its means of implementation. In fact, *Rose* notes that a constitutionally sound ordinance should be written "in a manner that does not encourage

8

arbitrary and discriminatory application" and "with sufficient precision that it does not encourage arbitrary and discriminatory application." *Id.* at 513, 514. Under *Rose*, it would appear that if the consent form, as Cashew argues, is "confusing, misleading[,] and did not adequately reflect the ordinance," the form would run afoul of the language of the ordinance, not the Constitution. *See, e.g., Carraway v. Sayad*, 717 S.W.2d 280, 286 (Mo. App. E.D. 1986) (where officer was "not 'fairly apprised' that his acts constituted violations of the Department's rules and regulations," the conduct did not violate the rules, but the rules were not void for vagueness). Cashew's failure to cite any authority supporting its position would be sufficient to deny its claim. "[A]n appellant is required to provide relevant and available legal authority in the argument or explain why such authority is not available." *Moseley v. Grundy Cty. Dist. R-V Sch.*, 319 S.W.3d 510, 513 (Mo. App. E.D. 2010).

But, even if a form used to implement an ordinance could render the ordinance unconstitutionally vague—a conclusion we do not reach—the cases applying the void-for-vagueness doctrine do not support Cashew's claim that the consent form is itself unconstitutionally vague. "The test in enforcing the [void-for-vagueness] doctrine is whether the language conveys to a person of ordinary intelligence a sufficiently definite" understanding of what is required "when measured by common understanding and practices." *Cocktail Fortune, Inc. v. Supervisor of Liquor Control*, 994 S.W.2d 955, 957 (Mo. banc 1999). "However, neither absolute certainty nor impossible standards of specificity are required in determining whether terms are impermissibly vague." *Id.* "[C]ourts employ 'greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less

9

severe.'"[6]  *Id.* at 957-58 (quoting *State ex rel. Nixon v. Telco Directory Pub.*, 863 S.W.2d 596, 600 (Mo. banc 1993)).

Cashew's primary complaint is that the consent form does not make it clear that a signature is required for eligible consenters who choose to abstain.  The consent form is a single page with one signature line.  The signature line comes at the end of a section in which the signatory expresses that its "consent is hereby given" to the applicant, with a number of bullet points setting forth that the eligible consenter understands various statements relating to the provision of its consent.  Under the signature line is a section (which Hall did not fill out) that must be filled out if the eligible consenter is an entity.  It requires the individual signing the consent form to acknowledge the authorization to sign on behalf of the entity.  Below that is a starred paragraph that states, "[if] you choose to abstain from giving your consent, you are choosing to withdraw from the consent process."  There is then a box that abstainers check in order to abstain.  But there was no signature line adjacent to or following the abstention box.

Though the form is not a model of clarity, we cannot say that the placement of the signature line renders the consent form (or the ordinance) void for vagueness.  While the signature line's placement under the portion in which the eligible consenter "attest[s] that [its] consent is hereby given," is awkward, Cashew and Assurant could have easily determined what was required.

In *Psychiatric Healthcare Corp.*, a hospital challenged a regulation regarding reimbursement for Medicaid services as unconstitutionally vague because it established no standards for how to apply the criteria for reimbursement.  100 S.W.3d at 900.  While this court agreed that the criteria set forth in the regulation were "not altogether clear," it determined that

---

[6] This is especially true here, where Cashew can begin the process again at any time, and attempt to obtain the appropriate number of consents within a new 90-day period.  KANSAS CITY, MO., CODE § 10-214(g) (2015).

10

the regulation was valid because the hospital had been provided with manuals that specifically set forth the criteria and how the criteria were utilized in the review process. *Id*. at 900-01. This court concluded that the "hospital is afforded ample notice as to" the contents of the criteria and how they are used in practice through the provider manuals. *Id*. at 900.

Similarly, if Cashew was confused by the consent form, Cashew was provided with materials plainly setting forth the requirements for an abstention: the ordinance. But Cashew's representative admitted that he had not read § 10-214, which had been provided to him, and that, if he had, he would have known that a signature was required. Moreover, Cashew has never denied that City's investigators, who oversee the process, were available to answer questions at any time. Rather, Cashew simply claims that it should not be required to ask questions to clarify requirements. This is not true. "[E]conomic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses . . . can be expected to consult relevant legislation in advance of action." *Id*. at 903 (quoting *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982)). "Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry . . . ." *Vill. of Hoffman Estates*, 455 U.S. at 498. "Where, as here, [Cashew] is fully informed of the specific requirements embodied in the [ordinance] and is made aware of the manner in which those requirements will be applied to them, it cannot be said that the [ordinance] is . . . a violation of due process." *Psychiatric Healthcare Corp.*, 100 S.W.3d at 901.

Cashew next argues that the consent form includes "requirements that are not included in the ordinance." But Cashew does not point to a single requirement in the consent form that does not also appear in the ordinance, and we can find none. The only requirement Cashew directly complains of, signing the consent form, is explicitly required by the ordinance.

11

Finally, Cashew argues that another ordinance, KANSAS CITY, MO., CODE § 10-216 (2015), contains a requirement that all consent forms must be notarized, and that City has essentially waived this requirement for all applicants. While § 10-216 does appear to have been admitted as an exhibit at the hearing, and Cashew has included it in its appendix, we do not find it in the legal file and Cashew has not separately deposited the exhibit with the court. "Items contained in an appendix, but which are not in the legal file or deposited with the appellate court, are not considered on appeal." *Stroh v. Stroh*, 454 S.W.3d 351, 355 n.1 (Mo. App. S.D. 2014). "[T]his Court cannot take judicial notice of an ordinance that is not in the record on appeal." *Union Ctr. Redevelopment Corp. v. St. Louis Pres. Bd. of Planning & Urban Design*, 75 S.W.3d 784, 786 (Mo. App. E.D. 2002).

In any event, Cashew does not attempt to explain how this apparent waiver contributes to the alleged vagueness of the consent form. Cashew does not argue that the waiver was applied in any sort of discriminatory manner or that the waiver caused confusion as to other requirements, nor does Cashew provide any authority holding that the waiver of one requirement requires City to waive all requirements. We consider the argument abandoned. *See Moseley*, 319 S.W.3d at 513 ("If an appellant fails to support his or her claim of error beyond mere conclusions, the point is considered abandoned.").

"In reviewing vagueness challenges, 'it is not necessary to determine if a situation could be imagined in which the language used might be vague or confusing . . . . Rather, the language is to be evaluated by applying it to the facts at hand.'" *Cocktail Fortune*, 994 S.W.2d at 958-59 (quoting *State v. Mahan*, 971 S.W.2d 307, 312 (Mo. banc 1998)). In the end, Cashew's real problem was that, when it turned in its consent forms on the last day and they were rejected, it

did not have the opportunity to timely obtain compliant consent forms.[7]  But this "is a due diligence . . . issue rather than a constitutional infirmity with" either the ordinance or the consent form.  *Lalani v. Dir. of Revenue*, 452 S.W.3d 147, 149 (Mo. banc 2014).

The point is denied.

## Conclusion

Because the evidence supports the Board's finding that Cashew did not timely provide a sufficient number of signed consent forms, and we determine that the ordinance is not unconstitutionally vague, the decision of the circuit court is reversed.

                                                _____
                                      Karen King Mitchell, Judge

Joseph M. Ellis, Presiding Judge,
and Anthony Rex Gabbert, Judge, concur.

---

[7] After Cashew turned in its consent forms and City denied the application due to the lack of signatures, Hall signed two consent forms, checking the abstention box and signing his name next to the box, in an open area in which there is no signature line.  City rejected this consent form because it was turned in after the deadline.  Cashew does not argue that City should have accepted the signed consent forms that were turned in untimely.