

# In the
# Missouri Court of Appeals
## Western District

DARNAY SESSION,

                **Appellant,**

v.

DIRECTOR OF REVENUE,

                **Respondent.**

**WD76415**

**OPINION FILED:**

**JANUARY 28, 2014**

---

**Appeal from the Circuit Court of Jackson County, Missouri
The Honorable Kenneth R. Garrett, Judge**

**Before Division One: Alok Ahuja, P.J., Thomas H. Newton,
Anthony Rex Gabbert, JJ.**

Darnay L. Session, Sr., *pro se*, appeals the circuit court's judgment dismissing his petition contesting the final decision of the Director of Revenue which suspended his driver's license after an evidentiary hearing for failure to maintain financial responsibility on his vehicle. Session asserts two points on appeal.[1] First, Session contends that the circuit court erred in finding that he failed to timely file his petition pursuant to Section 303.290.2, RSMo 2000, because the decision was against the weight of the evidence and the court failed to apply Section 302.515.2, RSMo 2000, which provides for an exception to the time limitations if notice of

---

[1]Session sets forth two points relied on, but argues three points relied on in the body of his brief. As his third point, which alleges that the circuit court erred in finding that he failed to timely file his petition for review in accordance with a fair construction of Section 303.290.2, is encompassed in our review of his second point, we address it therein and not separately.

license suspension or revocation is returned by postal authorities. Second, Session argues that the court erred in finding that he failed to timely file his petition for review because the Director's obligations pursuant to Section 32.030, RSMo 2000, require the Director to take additional reasonable steps to notify a driver, prior to suspending a driver's license, when certified mail is returned unclaimed. We affirm.[2]

On December 2, 2011, the Director upheld a suspension of Session's driving privileges for noncompliance with the mandatory insurance provisions of Section 303.025, RSMo Cum. Supp. 2010. The Director also upheld a decision pursuant to Section 303.030, RSMo 2000, requiring Session to post $1,894 bond or pursue other remedies set forth by the court. Notice of the decision was mailed to Session via certified mail on December 2, 2011. There is no dispute that the notice was sent to Session's accurate address. Session filed with this court a copy of the envelope which contained that notice.[3] The envelope contains a postal meter label indicating that the notice was sent certified mail on December 2, 2011. The envelope contains the dates "12/5/11," "12/19," and "12/25" handwritten underneath the letters "NL." The envelope also contains a "Return to Sender, Unclaimed, Unable to Forward" sticker. Finally, the envelope has a handwritten notation of "Remailed reg. 1st class 1-3-12" with initials below it.

---

[2]The Director suggested at oral argument, and in a "Suggestion of Mootness" filed with this court on November 8, 2013, that Session's appeal is moot because Session's driving privileges were reinstated on October 2, 2013, and, therefore, this court has no relief to offer Session. Pursuant to *O'Donohue v. Director of Revenue*, 896 S.W.2d 753, 754 n 4 (Mo. App. 1995), Session's appeal "is not moot, in that the suspension may be used to enhance subsequent violations of RSMo § 303.025 pursuant to RSMo § 303.042.2(2) and (3)." *See also Tarlton v. Director of Revenue*, 201 S.W.3d 564, 567 n 3 (Mo. App. 2006) ("We note that although the revocation period of Driver's driving privileges has elapsed, the issue on appeal is not moot because its resolution affects Driver's driving record.") The Director's Suggestion of Mootness is denied.

[3]Although it is unclear from the record whether this was also filed with the circuit court when Session filed his petition, the Director does not dispute the validity of the envelope or that it accurately represents the notice given Session.

On January 11, 2011, Session filed a petition with the circuit court seeking relief from the Director's decision. On February 3, 2012, the Director filed a motion to dismiss Session's petition alleging that Session failed to timely file his petition. On May 6, 2013, the circuit court concluded that it lacked jurisdiction to entertain the petition because Session failed to comply with the requirements of Section 303.290.2.[4] The court dismissed Session's case and Session appeals that dismissal.

"The proper standard of review for a trial court's grant of a motion to dismiss a petition is *de novo*." *In re Estate of Austin*, 389 S.W.3d 168, 171 (Mo. banc. 2013). In determining the appropriateness of the dismissal, we review the grounds raised in the motion to dismiss. *Id.* Here, the director moved to dismiss Session's petition because it was untimely filed pursuant to Section 303.290.2. Section 303.290.2 provides in part:

> Any decision, finding or order of the director, under the provisions of this chapter shall be subject to review by appeal to the circuit court of the county of the residence of the licensee, at the instance of any party in interest, in the manner provided by chapter 536, at any time within thirty days after notice is given the licensee of such decision, finding or order.

Our Eastern District has held that under Section 303.290.2 "[t]he date notice is given is the date of the mailing of the administrative decision." *Kalb v. Director of Revenue, State of Mo.*, 32 S.W.3d 126, 128 (Mo. App. 2000). "The phrase 'within thirty days' has been interpreted to mean that the appeal must be filed on or before the thirtieth day." *Id.* Session concedes these points. In Session's case, the administrative decision was mailed on December 2, 2011. The thirtieth day thereafter would have been January 1, 2012. Pursuant to Rule 44.01(a), because

---

[4]We note that, pursuant to *Webb ex rel. J.C.W. v. Wyciskalla*, 275 S.W.3d 249 (Mo. banc 2009), the proper terminology in this instance is that the court lacked "authority" rather than "jurisdiction." *Moore v. State*, 328 S.W.3d 700, 703 n 2 (Mo. banc 2010). Further, the court's judgment references "Petitioner's First and a Second Petition" and dismissed both. Only one petition, presumably the first filed January 11, 2012, is included in the record on appeal.

January 1st was a legal holiday which fell on a Sunday, and January 2nd was recognized as the legal holiday, Session's due date for filing his petition would have been January 3, 2012. Session filed his petition on January 11, 2012. The circuit court dismissed the petition as having failed to comply with the requirements of Section 303.290.2.

In his first point on appeal, Session contends that the circuit court erred in finding that he failed to timely file his petition pursuant to Section 303.290.2 because the decision was against the weight of the evidence and the court failed to apply Section 302.515.2 which provides for an exception to the time limitations if notice of license suspension or revocation is returned by postal authorities. Section 302.515.2 states that "notice is deemed received three days after mailing, unless returned by postal authorities." Session argues that because his notice was first returned to postal authorities, Section 302.515.2 means that he cannot be held to have received notice when it was sent because it was thereafter returned. We find Section 302.515 inapplicable to Section 303.290.2.[5]

Section 302.515 regards the notice of license suspension or revocation that is given by the Department of Revenue after making a determination pursuant to Section 302.505. Section 302.505 is a statute that authorizes the suspension or revocation of a driver's license where it is determined that a person "was arrested upon probable cause to believe such person was driving a motor vehicle while the alcohol concentration in the person's blood, breath, or urine" exceeded statutorily prescribed limits. Session's license was suspended for his alleged failure to maintain insurance coverage on his vehicle pursuant to Section 303.025, not for an alcohol related offense pursuant to Section 302.505. Chapter 303 of the Revised Statutes of Missouri, titled "The Motor Vehicle Financial Responsibility Law," governs the failure to maintain insurance coverage on a

---

[5]We take no position on the meaning of "unless returned by postal authorities" in Section 302.515.

4

vehicle.  Section 303.041, RSMo Cum. Supp. 2001, governs the process by which initial notice of a suspension pursuant to the Motor Vehicle Financial Responsibility Law is given.

Section 303.041 states:

> If the director determines that as a result of a verification sample or accident report that the owner of a motor vehicle has not maintained financial responsibility, or if the director determines as a result of an order of supervision that the operator of a motor vehicle has not maintained the financial responsibility as required in this chapter, the director shall thirty-three days after mailing notice, suspend the driving privilege of the owner or operator and/or the registration of the vehicle failing to meet such requirement.  The notice of suspension shall be mailed to the person at the last known address shown on the department's records.  The notice of suspension is deemed received three days after mailing.  The notice of the suspension shall clearly specify the reason and statutory grounds for the suspension and the effective date of the suspension, the right of the person to request a hearing, the procedure for requesting a hearing, and the date by which that request for a hearing must be made. . . .

Thus, while Section 302.515 makes an explicit exception to the general rule that notice by mail is deemed received within three days, Section 303.041 does not, stating simply and without qualification that "[t]he notice of suspension is deemed received three days after mailing."  The different wording of the two statutes is a strong indication that the legislature did not intend to limit the "notice deemed received" rule in the present case.  *Cf. State v. Moore*, 303 S.W.3d 515, 520 (Mo. banc 2010) ("The legislature's use of different terms in different subsections of the same statute is presumed to be intentional and for a particular purpose."); *MC Dev. Co., LLC v. Cent. R-3 School Dist. of St. Francois Cnty.*, 299 S.W.3d 600, 605 (Mo. banc 2009) ("'When different statutory terms are used in different subsections of a statute, appellate courts presume that the legislature intended the terms to have different meaning and effect.'" (citation omitted)).  Here, there is no dispute that Section 303.041 was complied with and that Session received his initial notice of a pending license suspension.

5

The record reflects that Session was involved in an automobile accident on February 25, 2011. Session was alleged, at the time of the accident, to be in noncompliance with the "mandatory insurance" provisions of Section 303.025. Session received his initial notice of license suspension pursuant to Section 303.041 on or about August 25, 2011. Pursuant to that notice, Session filed a request for a hearing on September 26, 2011. An administrative hearing was held before the Department of Revenue on October 19, 2011. The final decision of the Director regarding the suspension of Session's license was mailed to Session via certified mail on December 2, 2011.

The statute governing Session's appeal of the Director's decision is Section 303.290.2, set forth above, which provides that the final decision of the Director may be appealed, "in the manner provided by chapter 536, RSMo," within thirty days after notice is given. Chapter 536 provides that proceedings for review may be instituted by the filing of a petition within thirty days "after the mailing or delivery of the notice of the agency's final decision." Section 536.110.1, RSMo Cum. Supp. 2003. Unlike Section 302.515, 'Section 536.110 does not provide for any exception to the thirty-day requirement for filing a petition for review'; the thirty-day period begins to run on the date of mailing, not the date of receipt. *State Bd. of Regis. for the Healing Arts v. Draper*, 280 S.W.3d 134, 136 (Mo. App. 2009). Thus, as Session failed to file his petition for review within thirty days after notice was mailed, the court did not err in dismissing his petition as the court had no authority to entertain it.

Session additionally argues, however, that because the notice was initially sent certified mail, and not first class mail, he did not receive notice until the notice was sent first class mail on January 3, 2012. His authority for this contention is Section 303.409.1, RSMo 2000. Section 303.409 regards the "Motorist Insurance Identification Database" which was created to establish

6

"a database to use to verify compliance with the motor vehicle financial responsibility requirements" of Chapter 303. § 303.400, RSMo 2000; § 303.406, RSMo 2000. Section 303.409.1 establishes a statutory ground for suspending a vehicle's registration if the database indicates that the owner has failed to "maintain the financial responsibility required in section 303.025 for two consecutive months." Section 303.409.1 provides that the "suspension shall become effective thirty days after the subject person is deemed to have received the notice of suspension *by first class mail* as provided in section 303.041." (Emphasis added.) We find Section 303.409.1 unhelpful to Session.[6] Even if we were to conclude that Section 303.409.1, by implication, requires all notice in Chapter 303 be sent first class mail, it would not change the result here. Certified mail is a form of first class mail and, therefore, Session received notice by first class mail.[7] Point one is denied.

In Session's second point on appeal, he argues that the court erred in finding that he failed to timely file his petition for review because the Director's obligations pursuant to Section 32.030 require the Director to take additional reasonable steps to notify a driver, prior to suspending a driver's license, when certified mail is returned unclaimed. Session argues that the Director took an oath pursuant to Section 32.030 to support the Constitution of the United States and *Jones v. Flowers*, 547 U.S. 220 (2006), requires that when certified mail is returned

_____

[6]We note that the notice discussed in Section 303.409.1 is the "initial" notice under that statute that explains the license suspension, the right of the licensee to seek an administrative hearing, etc. On the facts of Session's case, as Session's license suspension resulted from a motor vehicle accident where he was alleged to have no liability insurance, not from being identified in the Motor Insurance Identification Database as having no insurance, Section 303.041, not Section 303.409, is applicable here. While Section 303.041 does not specify that notice is to be sent first class mail, there is no dispute that Session timely received his "initial" notice of license suspension pursuant to Section 303.041.

[7]*See* http://www.usps.com/ship/first-class.htm.

7

unclaimed, due process compels the Director to take additional reasonable steps to notify the licensee prior to suspension.

*Jones v. Flowers* involved the mailing of a certified letter to Gary Jones to inform him that taxes on his property were delinquent and that his home would be subject to public sale two years later if he did not redeem the property. 547 U.S. at 223. Jones purchased the home in 1967 and lived in it with his wife until they separated in 1993. *Id.* Jones moved out of the home in 1993, although the wife remained, but continued to pay the mortgage until 1997 when the mortgage was paid off. *Id.* Prior to that time, the mortgage company had always paid the property taxes. *Id.* Thereafter, the taxes went unpaid. *Id.* Ultimately, certified notice was sent to the home advising of the tax delinquency. *Id.* The notice went unclaimed and was sent back to the State. *Id.* at 224. The State eventually sold the $80,000 home for just over $20,000 to recover the tax delinquency. *Id.*

The United States Supreme Court concluded that the State should have taken additional reasonable steps to notify Jones, if practicable to do so, of the impending loss of his property. *Id.* at 234. The Court stated, however, that "if there were no reasonable additional steps the government could have taken upon return of the unclaimed notice letter, it cannot be faulted for doing nothing." *Id.* The Court suggested several possibilities for providing more notice, such as resending the notice by regular mail, posting notice on the front door of the residence, or addressing undeliverable mail to "occupant." *Id.* at 234-235. The Court expressed no disfavor with certified mail and stated that because the government repeatedly finds itself being asked to prove that notice was sent and received, "[u]sing certified mail provides the State with documentation of personal delivery and protection against false claims that notice was never received." *Id.* at 237. The Court went on to state, that "[t]hat added security, however, comes at

8

a price – the State also learns when notice has *not* been received." *Id*. The Court concluded that, under the facts in *Jones*, the State could not "simply ignore that information in proceeding to take and sell the owner's property . . . ." *Id.*

Here, the State did send Session notice via regular first class mail after the certified mail was returned. The envelope that Session filed with this court indicates that after notice was first sent certified mail on December 2, 2011, additional notes were left and/or attempts to deliver that certified mail were made. When the certified mail went unclaimed and was returned, it was then sent via regular mail on January 3, 2012. We find no evidence in the record that the State unreasonably delayed delivery or acted with "malfeasance" in its manner of providing notice as Session contends.

Sessions argues, however, that "a fair construction" of Section 303.290.2 mandates that he be given a full thirty days to bring his appeal and suggests that the due process discussed in *Jones* requires suspension of Section 303.290.2's thirty-day appeal deadline when certified mail is returned unclaimed.

"Due process applies to the suspension or revocation of a driver's license by the [S]tate." *Dabin v. Director of Revenue*, 9 S.W.3d 610, 615 (Mo. banc 2000). Due process requires that the government must give notice and provide an opportunity for a hearing appropriate to the nature of the case. *Id.* In the context of traffic commissioner decisions, our Missouri Supreme Court held in *Dabin v. Director of Revenue* that "[a] meaningful opportunity for a hearing before a circuit court . . . includes a reasonable time in which to challenge the findings of the traffic judge" before an Article V judge. *Id.* Session does not contend that Section 303.290.2's thirty-day appeal period is unreasonable, and given dicta in *Dabin*, such a contention would likely be

9

futile.[8] He contends, rather, that determining the date of his notice based upon when the certified mail was sent, rather than when the regular mail was sent, is unreasonable and deprives him of due process.

We cannot conclude that Session was denied due process because the thirty-day appeal period set forth in Section 303.290.2 was not suspended, or tolled, until he received notice via regular mail after his certified mail was returned unclaimed. *Jones* reiterated that "[d]ue process does not require that a property owner receive actual notice before the government may take his property" but that the government must provide "'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" 547 U.S. at 226 (quoting *Mullane v. Central Hanover Bank & Trust Co. et al.*, 339 U.S. 306, 314 (1950)).[9] Here, the record indicates that Session received notice that his driver's license was in jeopardy on August 25, 2011, for his alleged failure to comply with the mandatory insurance requirements of Section 303.290. As a result of that notice, Session filed a request for a hearing on September 26, 2011. Pursuant to Section 303.041, once Session requested a hearing, the suspension of his license was stayed until "a final order [was] issued following the hearing." Section 303.290.1 requires a final order to be issued

---

[8]In *Dabin*, the court considered whether two separate appellants had been given a reasonable time to challenge commissioner findings where the presiding judge entered judgment based on those findings the same day in one case, and the following day in the other. 9 S.W.3d at 612-613. The court concluded that they had not. *Id.* at 615. However, the statutes construed by the court in that case, Section 479.500, RSMo Cum. Supp. 2001, and Section 302.535, RSMo Cum. Supp. 2002, did not specify a time frame for a challenge. *Id.* Our Supreme Court left to the judges of the twenty-first judicial circuit, en banc, to determine a "reasonable time" for such challenges, but noted that small claims appeals must be perfected within ten days of a small claims court judgment, and family court commissioner decisions must be challenged within fifteen days. *Id.*; Section 482.365.2, RSMo 2000; Section 487.030.2, RSMo 2000.

[9]The United States Supreme Court in *Dixon v. Love*, 431 U.S. 105, 112 (1977), said that a licensee "can obtain all the safeguards procedural due process could be thought to require before a discretionary suspension or revocation becomes final."

10

within ninety days of the hearing request.  Session does not dispute that the Director sent notice of its final decision to his correct address.  Session gives no explanation as to why the certified mail went unclaimed, except to suggest in oral argument that he believes the post office never left notice of the certified mail at his address.  Nevertheless, Session argues that "the least that could be expected is that a regular-mail letter be sent; if not returned, the sender could presume that it was received where there is no question about the correctness of the address." (*citing Clear v. Missouri Coordinating Bd. For Higher Educ.*, 23 S.W.3d 896, 900 (Mo. App. 2000). Here, a "regular mail letter" was sent when the certified mail was returned undelivered.  Having already had his administrative hearing, Session was on notice that the results of that hearing would be sent to the address he provided.  We find that, under the circumstances, the State gave notice reasonably calculated to apprise Session of results of his evidentiary hearing and afford him an opportunity to present his objections.  We cannot conclude that Session was denied due process because he received actual notice of the Director's final decision after the thirty-day time for appeal expired.  We deem Session to have received notice of the Director's decision when it was first mailed and find that the circuit court had no authority to entertain Session's petition as it was not filed within thirty days of Session having received notice.  Point two is denied.

We conclude, therefore, that that the circuit court did not err in finding that Session failed to timely file his petition pursuant to Section 303.290.2.  The court's finding was supported by substantial evidence, was not against the weight of the evidence, and the notice requirements of Section 302.515 are inapplicable because Session's license was suspended for his alleged failure to maintain insurance coverage on his vehicle, not for an alcohol related offense.  Further, we find that on the facts of this case, Session was not denied due process as he had notice that his license was in jeopardy prior to the Director's final decision, knew to expect notice of the final

11

decision at the address he provided the Director, and the Director made efforts reasonably calculated to apprise Session of its final decision and afford him an opportunity to contest. We affirm the circuit court's judgment dismissing Session's petition as untimely filed.

Anthony Rex Gabbert, Judge

All concur.

12