BREARCLIFFE, Judge, dissenting:
¶28 The majority's opinion correctly states that each claimant was properly served with a complaint in forfeiture by certified mail and that each claimant failed timely to file an answer. The opinion also correctly states that "[o]rdinarily[ ] that would be the end of the matter." Supra ¶ 13. But because the opinion does not end the matter there, I respectfully dissent.
¶29 Given the facts here, this case is controlled by Dusenbery v. United States , 534 U.S. 161, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002), and not, as the majority reasons, by Jonesv. Flowers , 547 U.S. 220, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006) or by In re Estate of Snure , 234 Ariz. 203, 320 P.3d 316 (App. 2014). Dusenbery requires that we affirm, and neither Jones nor Estate of Snure justifies reversal.
¶30 In Dusenbery , the Court addressed the adequacy of service of notice of forfeiture on a federal prisoner. 534 U.S. at 163, 122 S.Ct. 694. Under the forfeiture statute involved there, the Federal Bureau of Investigation (FBI), as the seizing agency, was required to send written notice of the impending forfeiture of property-cash and a car-to each known, interested party and to publish notice in the newspaper. Id. at 163-64, 122 S.Ct. 694. The FBI both sent the notice by certified mail to the claimant, then a prisoner, "[in] care of" the federal prison, and also published notice in the newspaper. Id. at 164, 122 S.Ct. 694. When no response was received, the FBI "declared" the cash and car administratively forfeited and, ultimately, turned the cash over to the United States Marshal's Service. Id. About five years later, the claimant filed a motion for return of his property. Id. at 164-65, 122 S.Ct. 694. The district court rejected the claimant's challenge to the adequacy of service of the notice of forfeiture and the Sixth Circuit Court of Appeals affirmed, concluding that notice had "comported with due process even in the absence of proof that the mail actually reached" the claimant. Id. at 166, 122 S.Ct. 694.
¶31 Affirming the circuit court's decision, the Supreme Court stated the principle that, under the Fifth Amendment's Due Process Clause, those whose property interests are at stake are entitled to notice and an opportunity to be heard before the taking. Id. at 167, 122 S.Ct. 694. The Court analyzed the matter under Mullane v. Central Hanover Bank & Trust Co. , 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), in which it had held that, to be adequate, notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Id . at 168, 122 S.Ct. 694, quoting Mullane , 339 U.S. at 314, 70 S.Ct. 652. The Court further recognized that it had never required actual notice to a potential claimant. Id. at 170, 122 S.Ct. 694. The Court reasoned that the use of "the mail addressed to" the claimant in that case "was clearly acceptable for much the same reason we have approved mailed notice in the past." Id. at 172, 122 S.Ct. 694. So long as the method of sending the notice is reasonably calculated to provide notice of the proceedings, "[d]ue process requires no more." Id . at 172-73, 122 S.Ct. 694. Actual, received notice *1131 is not constitutionally required. Id . at 162, 122 S.Ct. 694.
¶32 Here, as expressly required and allowed by statute, the state made similar efforts reasonably calculated to give the claimants notice of the pendency of this action, though it did not achieve actual notice. The state filed the forfeiture complaints on February 1, 2016, and served copies of them on the claimants the same day by certified mail as required by A.R.S. § 13-4307, and as allowed by A.R.S. § 13-4311(A) and Dusenbery . The complaints were sent by certified mail to the address the claimants themselves provided-that of the office of their attorney of record. Under § 13-4307, service of copies of a complaint is effective upon mailing; thus, the claimants here are deemed to have received-and thus to have been served with-the complaints on February 1, 2016. Because that is so, under § 13-4311(G), the claimants' respective answers to the complaint were due on February 26, 2016.[6] The complaints, however, were unclaimed at the claimants' attorney's office after, apparently, three distinct attempts at delivery. The state did not learn, however, that the complaints were unclaimed until February 29, 2017, three days after the claimants' statutory twenty-day deadline to answer had passed. See § 13-4311(G). By the time the claimants' statutory deadline to answer had passed, the state had fulfilled both its statutory obligation and also its constitutional, due process obligation under Dusenbery to provide notice. By the time the state learned that the claimants had not received actual notice of the forfeiture complaint, the claimants were already in default, and no notice thereafter sent by the state would make the filing of an answer timely under the statute. The claimants were in default on February 27, on February 28, on February 29, on March 1, and on March 2, when they finally filed their answers.
¶33 Rather than respecting and stopping at the statute and Dusenbery , under which the claims here would be barred as untimely, the majority concludes that the answers were not untimely because the Supreme Court's decision in Jones required the state to do more. In Jones , a real property foreclosure case, the State of Arkansas attempted to notify the property owner of a tax-lien foreclosure by certified mail, but this notice was returned as unclaimed, and, two years later, the state foreclosed on the property. 547 U.S. at 223-24, 126 S.Ct. 1708. The owner subsequently learned about the foreclosure and filed suit, claiming that the state's failure to provide him with notice of his redemption right violated due process. Id. at 225, 126 S.Ct. 1708. The Arkansas Supreme Court disagreed, holding that "attempting to provide notice by certified mail satisfied due process" and "that due process does not require actual notice." Id. The United States Supreme Court observed that "when a letter is returned by the post office, the sender will ordinarily attempt to resend it, if it is practicable to do so." Id. at 230, 126 S.Ct. 1708. Therefore, "when mailed notice ... is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so." Id . at 225, 126 S.Ct. 1708. Because the state did not take such steps, as a constitutional matter, it reversed the state court. Id.
¶34 To the extent the Court in Jones expanded on Dusenbery and Mullane , it did so under the particular facts of the case. In Jones , the state had sufficient time after it learned of the non-delivery to give the second notice and still allow the claimant to act to forestall foreclosure. Id. at 223-24. Jones does not stand for a broad new principle applicable to every case in which the first attempt to give notice fails. The Court made it clear that it was not announcing a new rule: "[W]e disclaim any 'new rule' that is 'contrary to Dusenbery and a significant departure from Mullane .' " Id. at 238, 126 S.Ct. 1708. Because any required second effort must be practicable and reasonable, the Court went on to say that "if there were no reasonable additional steps the government could have taken upon return of the unclaimed notice letter, [the state] cannot be faulted for doing nothing." Id . at 234, 126 S.Ct. 1708.
*1132 ¶35 This court had its turn to apply the Jones principles in Estate of Snure, 234 Ariz. 203, 320 P.3d 316. In that probate case, the estate properly mailed a notice of disallowance of claim to an estate creditor but the notice was returned to the estate unclaimed and thus was never actually received. Id. ¶ 3. Under the law, the creditor had sixty days in which to challenge the disallowance. Id . ¶ 7. Because she did not receive actual notice of the disallowance, the creditor missed her statutory deadline. Id . ¶ 4. After she later attempted to assert her claim, the trial court barred it. Id . On appeal, the creditor asserted that the notice was constitutionally inadequate under the Due Process Clause "because the estate knew she had not received it." Id . ¶ 5. We concluded that, despite the fact that the estate had mailed the notice of disallowance as required by law, because it knew that notice had been returned as unclaimed, it was required then to take further steps to provide the notice. Id . ¶¶ 3, 10. We stated that "[p]roof that notice was sent either by certified or regular mail will be sufficient to comply with due process" and that "[i]t is only because the estate had actual knowledge that the notice had not been received and had reasonable steps available to provide notice that we find a constitutional violation." Id . at n.5. Because the estate did not take those steps, this court, as a constitutional matter, reversed the dismissal of the claim. Id . ¶ 13.
¶36 Both Jones and Estate of Snure are factually distinguishable from this case. In each, the sending party learned that the notice was unclaimed, and thus not actually received, in time for additional notice to be sent and have an effect. In Jones , the State of Arkansas learned that the notice of tax sale was unclaimed well before the two-year period passed for the owner to take action to save his property. 547 U.S. at 223-24, 126 S.Ct. 1708. In Estate of Snure , though not stated in the opinion, it appears that the estate learned the notice to the creditor was unclaimed well before the sixty-day period to challenge the disallowance had passed. 234 Ariz. 203, ¶¶ 5-11, 320 P.3d 316. That is, in each case, once the first method of service failed, the further reasonable steps that the courts demanded of the sender could have been effective in allowing the receiving party to act to prevent the forfeiture or loss of claim.
¶37 Jones requires that the state take reasonable and practicable steps in giving the follow-up notice if available. Here, unlike in Jones and Estate of Snure , there was nothing that the state could do after it learned that the complaints were unclaimed that would have provided any notice to the claimants that would have made a difference.[7] The claimants were already in default when the state learned of the unclaimed complaints. The only way the state could correct the matter of service to forestall the statutory default would have been to reverse the laws of time and space to go back to before February 27, 2016, when the claimants would not have been in default. That would be, to say the least, impracticable. The Due Process Clause does not require heroic efforts, Dusenbery , 534 U.S. at 170, 122 S.Ct. 694, let alone superhuman ones.
¶38 The forfeiture statute here has far shorter deadlines than those in Jones or the Estate of Snure . An answer to a forfeiture complaint is due twenty days after service of the complaint, service of the complaint may be made by certified mail, and there is a legal effect to missing the statutory deadline. See §§ 13-4311(G), 13-4307.[8] A twenty-day *1133 deadline combined with the vagaries of mail delivery can result in a party entitled to notice not getting it in time. But it is not for the courts to fashion relief from the harsh effects of statutory deadlines. Cf. Marco C. v. Sean C. , 218 Ariz. 216, ¶ 9, 181 P.3d 1137 (App. 2008) ("Although the result [of missing a deadline] may be harsh ..., we do not second-guess the legislature's policy decision."). Some states, as the Jones Court noted, have amended their laws to require personal service or actual notice. See 547 U.S. at 228 n.2, 126 S.Ct. 1708. The Arizona legislature has not yet done so, and it is not for this court to compensate for that failure or refusal. See Delgado v. Manor Care of Tucson AZ, LLC , 242 Ariz. 309, ¶ 22, 395 P.3d 698 (2017) (observing it is not the role of courts to rewrite statutes).
¶39 No case of which this court is aware does what the majority's opinion does here-retroactively extend a deadline that had passed by the time the sender learned of the failure of actual notice. One of our sister court's decisions, however, suggests that a statutory deadline should not be extended where actual notice is received after the deadline has passed. Session v. Director of Revenue , 417 S.W.3d 898 (Mo. Ct. App. 2014). Session was sent a notice of a final decision suspending his driver license by certified mail on December 2, 2011. Id. at 901. Under the relevant statute, Session had thirty days from service of that decision in which to file his appeal. Id. at 901. Because of the New Year's Day holiday, that due date fell on January 3, 2012. Id. Ultimately, the envelope with the notice was returned to the sender marked "Unclaimed." Id. The notice envelope showed three dates of attempted certified mail delivery. Id. at 901, 904. The notice was then sent by first-class mail on January 3, 2012, the day Session's appeal was due. Id. at 901. Consequently, Session did not receive actual notice by that first-class mail delivery until after his January 3, 2012, deadline had passed, and he filed his appeal on January 11, 2012. Id. The lower court dismissed the appeal as untimely. Id.
¶40 Among Session's other arguments, he contended that because the letter was returned as unclaimed, the state was required to take additional steps, which it did, but that he should have been given thirty days from the date he received actual notice in which to file his appeal. Id. at 904-05. That is, his appeal period should have been tolled. Id. at 905. The effect of not tolling Session's appeal period was that he did not receive additional time in which he could cure the untimeliness. The court refused to toll the deadline despite the fact that the timing of the second notice gave Session no practical way to act and file his appeal on time. Id. at 905.
¶41 After considering Jones , the Missouri Court of Appeals stated that it could not "conclude that Session was denied due process because the thirty-day appeal period ... was not suspended, or tolled, until he received notice via regular mail after his certified mail was returned unclaimed" and "[w]e cannot conclude that Session was denied due process because he received actual notice of the ... final decision after the thirty-day time for appeal expired." Id . at 905-06. "[T]he [sender] made efforts reasonably calculated to apprise Session of its final decision and afford him an opportunity to contest." Id . at 906. The court found "no evidence in the record that the State unreasonably delayed delivery or acted with 'malfeasance' in its manner of providing notice." Id . at 904. Here, the claimants are similarly asking that the time for filing their answers be tolled from the date their answers were due until, at least, the date they received actual notice. Jones did not compel such tolling in Session and neither Jones nor Estate of Snure compels such tolling here.
¶42 Two principles from Jones , one from the majority and one from the dissent, do fit here: "if there were no reasonable additional steps the government could have taken upon return of the unclaimed notice letter, it cannot be faulted for doing nothing," 547 U.S. at 234, 126 S.Ct. 1708, and "[t]he State cannot be charged to correct a problem of petitioner's own creation and of which it was not aware," id. at 245-46, 126 S.Ct. 1708 (Thomas, J., dissenting). The sender's fault in acting unreasonably is a feature of both Jones *1134 and Estate of Snure .[9] At its base, each of those cases concludes that standing by with knowledge of the lack of actual notice and doing nothing is a constitutionally unfair thing to do. It is not good, it is not right, and it ought not be encouraged. It is therefore key that, as in Session , what is missing in this case is any element of fault. There is no claim that the state stood by and did nothing knowing that the complaints had been timely served but not actually received. The state was completely unaware that there was not actual notice until after the answer period passed. It was not that the state did nothing; it was that there was, statutorily, nothing to do. Any fault here may lie in many places-in the post office, in the claimants' attorney, even in the legislature for the twenty-day deadline for filing an answer-but it does not lie with the state.
¶43 This court in Estate of Snure did not extend Jones . Today's decision now does so, discounts Dusenbery , and goes beyond what the Constitution commands. I respectfully disagree and would affirm.

This date assumes that the claimants should be granted an additional five calendar days to answer due to service by mail. See Ariz. R. Civ. P. 6(c) ; Ariz. R. Civ. P. 5(c)(2)(C).

The majority's opinion conflates what the state could do as a matter of grace or courtesy, by granting an extension or delaying its forfeiture proceeding, with what it must do as a constitutional requirement.

Contrary to the majority's point that a non-answering party is not "automatically" in default because the state must apply for forfeiture, how the forfeiture proceeds is solely dependent upon whether or not the claimant has timely filed an answer. It is effectively an "automatic default." If a potential claimant fails to file an answer to a forfeiture complaint, the state is required to proceed as if the complaint were uncontested, in accordance with A.R.S. §§ 13-4311(G) ("If no proper answer is timely filed, the attorney for the state shall proceed as provided in §§ 13-4314 and 13-4315...."), 13-4314(A) ("If no ... claims are timely filed ..., the attorney for the state shall apply to the court for an order of forfeiture and allocation of forfeited property pursuant to § 13-4315."), and 13-4315(A) ("Any property ... forfeited to the state ... shall be transferred as requested by the attorney for the state....").

See Jones , 547 U.S. at 237, 239, 126 S.Ct. 1708 (the state cannot "simply ignore" information prior to the taking and sale of the owner's property, nor is it "too much to insist that the State do a bit more to attempt to let [the owner] know about it when the notice letter ... is returned unclaimed"); Estate of Snure , 234 Ariz. 203, n.5, 320 P.3d 316 ("It is only because the estate had actual knowledge that the notice had not been received and had reasonable steps available to provide notice that we find a constitutional violation.").