

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| JASON A. PRESCOTT, | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | WD77389 |
| | ) | |
| MISSOURI DEPARTMENT OF | ) | FILED: June 30, 2015 |
| SOCIAL SERVICES, | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Cole County**
**The Honorable Jon E. Beetem, Judge**

**Before Division Four: Alok Ahuja, C.J., Lisa White Hardwick,, J. and**
**Robert M. Clayton, III, Sp.J.**

Jason Prescott is a professional counselor who specializes in treating Medicaid-eligible mentally ill children. Following an audit, the Department of Social Services determined that Prescott had submitted unsubstantiated claims, and had been overpaid. The Administrative Hearing Commission (the "AHC") dismissed Prescott's petition for review of the Department's decision, finding that his application was untimely. The circuit court affirmed the AHC's decision, and Prescott now appeals to this Court. We affirm.

## Factual Background

Prescott's primary source of compensation for his counseling services is through the State-administered Medicaid program. In the Fall of 2011, the Department's Medicaid Audit and Compliance Unit audited Prescott. Prescott was unable to provide auditors with any supporting documentation for his claims for services performed in 2010, because of a computer

failure. As a result, the Department sent a decision letter to Prescott by certified mail on October 31, 2011, finding that he had submitted false claims in the amount of $41,296 ("Decision Letter"). The disallowed claims constituted all of the funds Prescott had received from the Medicaid program in 2010.

Prescott alleges that he did not receive the Decision Letter until November 23, 2011. On that date, Prescott asserts that he found a postal slip in the bushes in front of his home, notifying him that the Postal Service had attempted to deliver a certified letter from the Department. Prescott contacted Toni Davis at the Department, whose name appeared on the slip, and asked her whether the Decision Letter was still available. Davis contacted the Post Office and confirmed that the letter was still available for pickup at Prescott's local post office. Davis called Prescott back, and informed him that the letter was available. Prescott retrieved the letter later on November 23, 2011.

As required by § 621.055,[1] the Decision Letter advised Prescott of his appeal rights. In relevant part, the letter stated:

> This is a final decision regarding administration of the medical assistance program in Missouri. Missouri Statute, Section 208.156, RSMo (2000) provides for appeal of this decision.
>
> If you were adversely affected by this decision, you may appeal this decision to the Administrative Hearing Commission. To appeal, you must file a petition within 30 days from the date of mailing or delivery of this decision, whichever is earlier . . . . If any such petition is sent by registered mail or certified mail, the petition will be deemed filed on the date it is mailed.

The date on which Prescott received the Decision Letter (November 23, 2011) was the day before Thanksgiving. Prescott had a pre-arranged, non-refundable vacation trip scheduled to begin on Thanksgiving Day. Prescott alleges that Davis told him that, "while she could not give

---

[1] Unless otherwise indicated, statutory citations refer to the 2000 edition of the Revised Statutes of Missouri, as updated through the 2014 Cumulative Supplement. The relevant statutory provisions have not been amended since the time of the Department's Decision Letter in 2011.

2

him legal advice, [Prescott] would have 30 days from the date he received; i.e. picked up, the October 31 letter in which to file an appeal." By affidavit, Davis denied that she said this to Prescott.

Upon return from his vacation, Prescott sent a letter to the Department on December 6, 2011, notifying it of his intention to seek AHC review. He then filed his petition for review with the AHC on December 12, 2011.

At some point following his receipt of the Decision Letter, Prescott asserts that he had his computer repaired, and was able to provide the Department with documentation supporting $35,032 of the claims which the Department had disallowed in the Decision Letter.

The Department filed a motion for involuntary dismissal of Prescott's administrative appeal, alleging that it was untimely under § 208.156.8. The AHC granted the Department's motion. It found that the Decision Letter was sent by certified mail on October 31, 2011, but that Prescott did not receive it until November 23, 2011. Prescott did not file his petition to appeal with the AHC until December 12, 2011, more than 30 days after the mailing of the Decision Letter. The AHC determined that, under § 208.156.8, it only had jurisdiction to hear appeals of Department decisions if the appeal was commenced within thirty days from the date of mailing of the Department's decision. As a result, the AHC determined that Prescott's petition for review was untimely, and it ordered the petition dismissed.

Prescott filed a petition for judicial review in the Circuit Court of Cole County. The circuit court affirmed the AHC's decision. Prescott now appeals to this Court.

**Standard of Review**

On appeal from a circuit court's review of an AHC decision, this Court reviews the AHC's decision, not the judgment of the circuit court. *Psychare Mgmt., Inc. v. Dep't of Social Servs.*, 980 S.W.2d 311, 312 (Mo. banc 1998). "In reviewing the commission's decision, the

3

Court may not determine the weight of the evidence or substitute its discretion for that of the administrative body; the Court's function is to determine primarily whether competent and substantial evidence upon the whole record supports the decision, whether the decision is arbitrary, capricious, or unreasonable, and whether the commission abused its discretion." *Id.* Questions of law, however, are reviewed by this Court *de novo*. *Albanna v. State Bd. of Registration for Healing Arts*, 293 S.W.3d 423, 428 (Mo. banc 2009).

## Discussion

### I.

Prescott's first Point raises an issue of statutory interpretation: he argues that the AHC erred in concluding that his appeal was untimely under § 208.156.8.

Section 208.156.8 states in pertinent part that a person providing services for which benefit payments are authorized under the Medicaid program

> shall have ***thirty days from the date of mailing or delivery of a decision*** of the department of social services . . . in which to file his petition for review with the administrative hearing commission . . . .

(Emphasis added.) As a general proposition, "[t]he failure to comply with the statutory time limitations for appeal from an administrative agency decision, whether to another administrative body or to a circuit court, results in the lapse of subject matter jurisdiction and the loss of right of appeal." *Fayette No. 1, Inc. v. Mo. Dep't of Social Servs.*, 853 S.W.2d 393, 396 (Mo. App. W.D. 1993) (citing *Cmty. Fed. Sav. & Loan Ass'n v. Dir. of Revenue*, 752 S.W.2d 794, 799 (Mo. banc 1988)).

Prescott makes two interrelated arguments to support his claim that his petition for review was timely under § 208.156.8. He argues: (1) that the Department's use of certified mail to send the Decision Letter to him did not constitute "mailing," but instead "delivery," of the letter; and (2) even if the use of certified mail constituted "mailing," that his petition for review

4

was timely so long as it was filed *either* within thirty days of the date of mailing, *or* within thirty days of the date of delivery, of the letter. We conclude, to the contrary, that the Department's use of certified mail constituted a "mailing" of the Decision Letter within the meaning of § 208.156.8, and that the statute required Prescott to petition for review within thirty days of that mailing, not within thirty days of his *receipt* of the letter. The Decision Letter was mailed to Prescott on October 31, 2011 by certified mail, but he did not file his petition for review with the AHC until December 12, 2011; his petition was accordingly untimely under the statute.

## A.

We first address Prescott's contention that the Department's use of certified mail to send him the Decision Letter did not constitute the "mailing" contemplated by § 208.156.8.

As the Supreme Court of the United States has recognized, use of certified mail for official notices may have significant benefits for governmental agencies, because "[u]sing certified mail provides the State with documentation of personal delivery and protection against false claims that notice was never received." *Jones v. Flowers*, 547 U.S. 220, 237 (2006). At the same time, however, "the use of certified mail might make actual notice less likely in some cases – the letter cannot be left like regular mail to be examined at the end of the day, and it can only be retrieved from the post office for a specified period of time." *Id.* at 235. Postal rules provide that pieces of certified mail "may not be opened or given to the recipient before the recipient signs and legibly prints his or her name on the delivery receipt (and return receipt, if applicable) and returns the receipt(s) to the USPS employee." United States Postal Service, DOMESTIC MAIL MANUAL § 508.1.1.7.b (May 31, 2015). Thus, if the intended recipient of certified mail is not available at the time a mail carrier attempts to deliver it, a notice of attempted delivery is left at the recipient's address, the mail is returned to the post office, and the recipient has a limited

5

period of time in which to retrieve the certified mail from the post office before it is returned to the sender.

Because of these restrictions on the delivery of certified mail, courts in other jurisdictions have held that where a statute or insurance policy requires that notice of cancellation of the policy be "mailed," notice sent by certified mail does not comply with the "mailing" requirement, but instead constitutes an attempt at actual delivery which is effective only upon receipt.[2]

Under the statute at issue in this case, however, the certified mail sent to Prescott constituted "mailing" of the Decision Letter. We reach this conclusion based on several considerations. First, although § 208.156.8 specifies the time within which an aggrieved party must petition for review of a decision of the Department, a separate statute – § 621.055.3 – specifies the notice of appeal rights which the Department's decisions must contain. We must consider § 621.055.3 in interpreting the provisions of § 208.156.8.

> "[C]onsistent statutes relating to the same subject . . . are construed together as
> though constituting one act, whether adopted at different dates or separated by

---

[2] *See*, *e.g.*, *Certification from U.S. Court of Appeals for Ninth Circuit v. Kachman*, 198 P.3d 505, 508-09 (Wash. banc 2008) (state statute provides that notice of cancellation of policy "must be actually delivered or mailed to the named insured"; "Since certified mail requires more of the insured to effect delivery of a notice of cancellation, it does not satisfy the 'mailed' prong of the statute. Certified mail, as a request of the United States post office to *actually deliver* a letter to the insured, falls under the 'actually delivered' prong of [the statute]."); *Fidelity & Cas. Co. of N.Y. v. Riley*, 178 A. 250, 253 (Md. 1935) (holding that where a policy's cancellation clause allowed for "written notice [to be either] delivered to the insured or mailed to his last address," sending cancellation notices by registered mail constituted an attempt at actual delivery, which "failed of its purpose" when notice was not received, and so was not effective to cancel the policy); *Cornhusker Cas. Ins. Co. v. Kachman*, 514 F.3d 982, 987-88 (9th Cir. 2008) ("[A] majority of other jurisdictions that have considered whether certified mail qualifies as mail for purposes of notice of insurance cancellation have held that notice sent by certified mail, when not actually received, is insufficient to effect cancellation."); *see generally* 43 AM.JUR.2D INSURANCE § 414, at 488-89 (2013); *but see Gerard v. Mass. Bonding & Ins. Co.*, 203 A.2d 279, 286 (N.H. 1964) ("The fact that [notice of policy cancellation] was sent by registered mail, which is ordinarily considered a safer method than ordinary mail, should not militate against it."); *Westmoreland v. Gen. Accid. Fire & Life Assur. Corp.*, 129 A.2d 623, 626-27 (Conn. 1957) ("When the provision in a policy is that notice by mail is sufficient, that provision is broad enough to cover all the kinds of mail which are commonly used to convey messages. Registered mail is just as much mail as ordinary mail.").

long or short intervals." The rule "proceeds upon the supposition that the statutes in question are intended to be read consistently and harmoniously in their several parts and provisions."

*Page v. Scavuzzo*, 412 S.W.3d 263, 269 (Mo. App. W.D. 2013) (quoting *State ex rel. Rothermich v. Gallagher*, 816 S.W.2d 194, 200 (Mo. banc 1991)); *see also Farmers' Elec. Co-op, Inc. v. Mo. Dep't of Corrections*, 977 S.W.2d 266, 270 (Mo. banc 1998).[3]

Among other things, the notice of appeal rights required by § 621.055.3 – which was contained in the Decision Letter – provides that "[i]f any such petition [for AHC review] is sent by registered mail or certified mail, the petition will be deemed filed *on the date it is mailed*." § 621.055.3 (emphasis added). Thus § 621.055.3 specifically refers to the "mail[ing]" of a document by "certified mail." This reflects the legislature's understanding that documents transmitted by certified mail are "mailed" within the meaning of the statutes.

Second, references to the "mailing" of documents by certified mail appear throughout Missouri statutes and Supreme Court Rules. Most significantly, two statutes which specify time limits for seeking AHC review of administrative agency decisions specifically refer to the "mailing" of an agency decision by certified mail, and distinguish the "mailing" of a decision by certified mail from the "delivery" of the decision. Thus, § 324.038.2 provides that, if a board within the Division of Professional Registration issues a probated license, "the applicant may file, within thirty days of the date of *delivery or mailing by certified mail* of written notice of probation, a written complaint with the administrative hearing commission seeking review of the board's determination." (Emphasis added.) Similarly, § 621.120 provides that, if certain licensing agencies refuse to permit an applicant to be examined for licensure, or refuse to issue

---

[3] Subsection 3 was added to § 621.055 in 2001. *See* H.B. 693, 2001 Mo. Laws 739, 743. Section 208.156.8, on the other hand, has remained unchanged since 1982. Prescott argues that, in these circumstances, it makes no sense to rely on § 621.055.3 to give meaning to a statute enacted almost thirty years earlier. As the quotation in the text reflects, however, the statutes must be read together, although adopted at different times.

7

or renew a license, "such applicant may file, within thirty days after *the delivery or mailing by certified mail* of written notice of such refusal to the applicant, a complaint with the administrative hearing commission." (Emphasis added.) These statutes clearly state that certified mail is dispatched by "mailing," and that the sending of a notice by certified mail is distinct from the "delivery" of the notice.[4] Numerous other Missouri statutes refer to the "mailing" of certified mail.[5] Supreme Court Rules similarly refer to the service of various court filings by "mailing" the documents by certified mail. *See* Rules 54.12(b)(2), 54.15(b), 90.09(a), 142.02. If we were to adopt Prescott's argument, we would be interpreting the term "mailing" in

---

[4] These other statutes specify that a filing deadline is triggered by "mailing *by certified mail*." The specification of "certified mail" apparently excludes other types of mailings from triggering the filing deadlines, such as regular (unrestricted-delivery) mail. Be that as it may, the statutes plainly recognize certified mailing as a species of "mailing," and something distinct from "delivery."

[5] *See*, *e.g.*, § 67.820.1 (providing that clerk "shall mail by certified mail with return receipt a copy of each published notice in regard to the formation of any special taxing district"); § 99.879.2 (providing that agency "shall serve notice to each owner . . . by mailing to the owner by certified mail to the last known address of such owner," that owner's property has been deemed abandoned); § 210.245.2, .4 (providing that parties disputing actions concerning licensing of day care centers shall respond "within [specified number of] days of the delivery or mailing by certified mail of the notice"); § 276.401.3 (providing that transfer of title to certain commodities shall occur upon "mailing of documents, if required, by certified mail"); § 375.261.1 (following substituted service of process on Department of Insurance, "[t]he director shall forthwith mail by certified mail, with return receipt requested, one of the copies of the summons, with petition thereto attached, to the defendant"); § 393.145.5 (following entry of default judgment placing utility in receivership, "the court shall mail to the defendant at its last known address by certified mail with a request for return receipt and with directions to deliver to the addressee only, a notice informing the defendant of the judgment and the date it was entered"); § 407.040.4(3), (4) (providing that attorney general's civil investigative demands or subpoenas may be served by "[m]ailing by registered or certified mail"); § 407.581.6 (providing that if auto dealer fails to provide purchaser with vehicle title, "the director [of revenue] shall mail by certified mail, return receipt requested, a notice to the dealer at the last address given to the department by that dealer"); § 416.091.4(2) (providing that attorney general's demands to produce documents may be served by "[m]ailing by certified mail, return receipt requested"); § 441.065(3) (where tenant abandons property in leased premises, requiring that landlord "mail[ ] to the last known address of the tenant by both first class mail and certified mail, return receipt requested, a notice of the landlord's belief of abandonment"); § 454.519.2 (providing that "[n]o such lien [for delinquent child support, against a cause of action for personal injury,] shall be effective unless and until a written notice is mailed by certified mail, return receipt requested" to the tort-feasor); § 482.350 (providing for service of summons in small claims division of the circuit court "by mailing a copy of the summons and the complaint to the defendant at his last known address by certified mail, return receipt requested, delivery restricted to the addressee").

8

§§ 208.156.8 and 621.055.3 in a manner which is inconsistent with the usage in these numerous other Missouri statutes and rules.

Finally, a recent decision of this Court held that a governmental notice sent by certified mail constituted a "mailing," rather than a "delivery," of the notice, and that the date of mailing triggered an aggrieved party's time to seek judicial review. In *Session v. Dir. of Revenue*, 417 S.W.3d 898 (Mo. App. W.D. 2014), Session petitioned for judicial review of a decision of the Director of Revenue suspending his driver's license. The notice of suspension was initially mailed to Session, at his accurate home address, by certified mail on December 2, 2011. *Id.* at 900. Despite apparent delivery attempts on December 5, 19, and 25, the notice was returned to the Department of Revenue with the notation "Return to Sender, Unclaimed, Unable to Forward." *Id.* at 901. The Department resent the notice to the same address, by regular mail, on January 3, 2012. *Id.* Session then filed his petition for judicial review in the circuit court on January 11, 2012. *Id.*

The governing statute at issue in *Session*, § 536.110.1, required that Session petition for judicial review within thirty days "after the mailing or delivery of the notice of the agency's final decision." We held that his petition was untimely, because it was not filed within thirty days of the initial mailing by certified mail on December 2, 2011, even though that initial mailing proved to be unsuccessful. We emphasized that "the thirty-day period begins to run on the date of mailing, not the date of receipt." *Id.* at 903. We also rejected Session's contention that the initial mailing by certified mail failed to satisfy the requirement that he receive notice by first class mail: "[c]ertified mail is a form of first class mail and, therefore, Session received notice by first

9

class mail" when the initial notice of suspension was sent to him by certified mail on December 2, 2011. *Id.*[6]

We reject Prescott's argument that the Department's use of certified mail did not constitute a "mailing" within the meaning of §§ 208.156.8 and 621.055.3.

**B.**

Prescott also argues that, even if the Decision Letter was "mail[ed]" to him within the meaning of § 208.156.8, the plain language of the statute gave him *either* thirty days from the date of the letter's mailing, *or* thirty days from its delivery, within which to seek AHC review. Relying on the date of "delivery" of the letter, Prescott contends that his petition for review was timely, because he received the Department's Decision Letter on November 23, 2011, and filed his petition for review on December 12, 2011, less than thirty days later.

In *R.B. Industries, Inc. v. Goldberg*, 601 S.W.2d 5 (Mo. banc 1980), the Missouri Supreme Court rejected an argument identical to Prescott's. *Goldberg* involved § 536.110.1, which provides that petitions for judicial review of agency decisions in contested cases must be filed in the circuit court "within thirty days after the mailing or delivery of the notice of the agency's final decision." In *Goldberg*, the agency decision was mailed on January 23, 1979, and received by the aggrieved party on January 27, 1979. *Id.* at 6. The aggrieved party filed its petition for judicial review on February 23, 1979, 31 days after the decision was mailed, but only 27 days after the aggrieved party received the decision. *Id.* Thus, the aggrieved party's petition

---

[6] Consistent with *Jones v. Flowers*, 547 U.S. 220 (2006), which is discussed below in § II, *Session* also concluded that the driver in that case had not been denied due process by virtue of the Department of Revenue's failed attempt at sending the notice by certified mail. *Session*, 417 S.W.3d at 904. *Session* emphasized that "due process does not require that a property owner receive actual notice," but only that the government engage in notification efforts which are "reasonably calculated, under all the circumstances, to apprise interested parties." *Id.* at 905 (citations and internal quotation marks omitted). We also observed that "the State did send Session notice via regular first class mail after the certified mail was returned," and there was "no evidence in the record that the State unreasonably delayed delivery or acted with 'malfeasance' in its manner of providing notice." *Id.* at 904.

10

for review would have been considered timely if it was permitted to file "within thirty days after the . . . delivery of the notice." The Supreme Court held, however, that "the thirty-day period began to run on January 23, 1979, *the date of mailing*." *Id.* The Court explained that "[t]o hold otherwise would be . . . to render the use of the word 'mailing' [in § 536.110.1] meaningless . . . ." *Id.*

> This Court described the rule announced in *Goldberg* as follows:
>
> A rule or statute . . . which requires an action within a number of days of the mailing or delivery of a notice of decision describes two modes for the service of notice: by mail or by other delivery – and *when notice is by mail, the computation of time to perform the action commences on the date of the mailing*.

*Cardinal Glennon Mem. Hosp. Coffee Shop v. Dir. of Revenue*, 624 S.W.2d 115, 118 (Mo. App. W.D. 1981) (emphasis added; applying § 161.273); *see also Gleason v. Pub. Safety Comm'n*, 601 S.W.2d 4, 5 (Mo. banc 1980) (companion case to *Goldberg*, also applying § 536.110.1); *Daly v. Warner-Jenkinson Mfg. Co.*, 92 S.W.3d 319, 321-22 (Mo. App. E.D. 2002) (applying § 138.432, which permits a party to seek administrative review "within thirty days following the date of notification or mailing"); *City of St. Louis v. Dir. of Revenue*, 654 S.W.2d 118, 121-22 (Mo. App. W.D. 1983) (applying § 161.273).

The *Goldberg* rule is fully applicable here. As *Goldberg* recognizes, adoption of Prescott's argument would render § 208.156.8's reference to "the date of mailing" completely superfluous. Every piece of mail – whether regular first-class mail, registered mail, or certified mail – is ultimately "delivered" to the addressee. And, in every case, the date of delivery is on or after the date on which the item is mailed. Therefore, if an aggrieved party could rely on the date of "delivery," even in cases in which an agency decision was mailed, the aggrieved party would have an equal or longer period in which to seek review by reliance on the date of delivery in every case. This would make the reference to "the date of mailing" in § 208.156.8 unnecessary.

11

Under *Goldberg* and § 208.156.8, Prescott was required to file his petition for AHC review within "thirty days from the date of mailing" of the Department's Decision Letter.

An additional consideration requires that the date of mailing, rather than the date of delivery, control the timeliness of Prescott's petition. As noted above, § 621.055.3 specifies the notice of appeal rights which the Department's decisions must contain; § 208.156.8 must be interpreted consistently with, and in light of, § 621.055.3. Section 621.055.3 provides in relevant part that the Department's decisions must contain this notification:

> If you were adversely affected by this decision, you may appeal this decision to the administrative hearing commission. To appeal, you must file a petition with the administrative hearing commission within thirty days from the date of mailing or delivery of this decision, *whichever is earlier . . . .*

§ 621.055.3 (emphasis added). As noted above, the Decision Letter contained this statutorily required language. Separate and apart from the *Goldberg* rule, the emphasized language in § 621.055.3 confirms that an aggrieved party has thirty days from the *earlier* of the date of mailing or delivery of a decision of the Department in which to seek AHC review.

Because the Decision Letter was "mail[ed]" to Prescott, he had thirty days from the date of that mailing – October 31, 2011 – in which to petition for administrative review. He failed to do so, and his petition was therefore untimely under § 208.156.8. Prescott's first Point is denied.

## II.

In his second Point Prescott argues that the AHC's dismissal of his petition for review should be reversed because the Department's attempt to notify him of its decision was insufficient to satisfy due process requirements. Prescott argues that the Department violated due process principles because it made no further efforts to contact him subsequent to mailing the Decision Letter on October 31, 2011, until he called Toni Davis at the Department on November 23, 2001.

12

Due process principles generally require that prior to depriving a person of property, a governmental agency must provide "'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections.'" *Jones v. Flowers*, 547 U.S. 220, 226 (2006) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). The Court in *Jones* explained, however, that "[d]ue process does not require that a property owner receive actual notice before the government may take his property," *id.*, and that "the failure of notice in a specific case does not establish the inadequacy of the attempted notice." *Id.* at 231; *see also*, *e.g.*, *Dusenberry v. United States*, 534 U.S. 161, 170 (2002) (prior due-process cases "do[ ] not say that the State *must provide* actual notice, but that it *must attempt to provide* actual notice").

*Jones* involved a notice of a real-estate tax delinquency sent to a property owner by certified mail, which was returned to the sending agency as "unclaimed." 547 U.S. at 223-24. "In response to the returned form suggesting that Jones had not received notice . . . , the State did – nothing." *Id.* at 234. *Jones* did not question the reasonableness of the agency's initial decision to send notice by certified mail. It held, however, that "the government's knowledge that notice pursuant to the normal procedure was ineffective triggered an obligation on the government's part to take additional steps to effect notice." *Id.* at 230. The Court suggested that "additional reasonable steps" which the government could have taken to satisfy its due-process obligations included re-sending the notice by regular mail (either addressed to the owner or to "occupant"), or posting notice on the property itself. *Id.* at 234-35. Multiple Missouri state-court decisions have discussed and applied *Jones'* holding. *See*, *e.g.*, *In re Foreclosures of Liens for Delinquent Land Taxes by Action in Rem (Lewis Mitchell Co. v. Bhatti)*, 334 S.W.3d 444 (Mo. banc 2011); *Schlereth v. Hardy*, 280 S.W.3d 47, 50-52 (Mo. banc 2009); *In re Foreclosure of Liens for*

*Delinquent Land Taxes by Action in Rem (Collector of Revenue v. Holton)*, 428 S.W.3d 670, 677-83 (Mo. App. W.D. 2014); *Session v. Dir. of Revenue*, 417 S.W.3d 898, 904 (Mo. App. W.D. 2014).

Prescott does not dispute that the Department's *initial* decision to send notice by certified mail satisfied due process principles. Given that the Department was aware of Prescott's address, its initial effort to send notice by certified mail was plainly reasonably calculated to inform him of the decision, and of his right to review of the decision. *SeeDusenberry v. United States*, 534 U.S. 161, 169 (2002) ("Petitioner does not seriously contest the FBI's use of the postal service to send the certified letter to him, a method our cases have recognized as adequate for known addressees . . . ."); *Schlereth*, 280 S.W3d at 51 ("[S]ending certified mail to Hardy's known and actual residence . . . seems reasonably calculated to notify Hardy of her redemption rights – until the sender learns that the notice was unclaimed."); *Session*, 417 S.W.3d at 904 (*Jones* "expressed no disfavor with certified mail").

Rather than attacking the Department's initial certified mailing, Prescott argues that the Department violated his due process rights by failing to do anything further to notify him *after* the initial mailing, and prior to November 23, 2011. Thus, Prescott suggests that the Department should have followed the certified mailing by also sending the Decision Letter to him by regular mail, or that it should have affirmatively monitored whether the Decision Letter had been delivered by periodically calling the Post Office, or by tracking the mailing on the internet.

Prescott's argument ignores an important limitation on *Jones'* holding. *Jones* held only that the government had an obligation to take reasonable additional steps to notify an aggrieved party when it had "knowledge that notice pursuant to the normal procedure was ineffective." 547 U.S. at 230. Without actual or constructive knowledge that an otherwise-reasonable method

14

of notification has failed, the government has no obligation to engage in additional notification efforts.

The Missouri Supreme Court made this clear in *Bhatti*, 334 S.W.3d 444. In *Bhatti*, the Sheriff of the City of St. Louis notified a real-property owner of an impending tax sale by first-class mail addressed to the property which was the subject of the foreclosure. *Id.* at 446. The property owner testified that he did not receive the notice, because he did not live at the tax-delinquent property. *Id.* Although the circuit court believed the property owner's testimony, it nevertheless held that the mailing of notice to the address contained in the land records satisfied due process principles. *Id.* at 446-47. On appeal, the property owner argued "that the sheriff had reasonable, additional options for notifying him of the pending tax sale," and that the sheriff's reliance solely on a regular-mail notice addressed to the property violated due process. *Id.* at 447. The Missouri Supreme Court disagreed, and affirmed the circuit court's judgment. It held that, "[w]ithout knowledge that the notice [sent by regular mail] was not reasonably calculated under these circumstances to apprise Owner, the sheriff was not required to take any further steps to notify Owner." *Id.* at 449. The Court went on to explain:

> *The issue here is whether the sheriff knew or had reason to know that the notice he sent to Owner was ineffective*, and if so, whether the sheriff took reasonable, additional steps to notify Owner of the potential taking of the property. The circuit court found that, despite believing that Owner did not receive the notice, there was no due process violation as Owner failed to present evidence that the sheriff knew or should have known that the notice of the tax sale was ineffective. Under these facts, *Flowers* does not require the sheriff to take any additional steps to notify the owner.

*Id.* at 450 (emphasis added; citation omitted); *see also*, *Holton*, 428 S.W.3d at 679 ("Both *Jones* and *Schlereth* relied on the fact that the notifying party *knew* that the notice attempts had failed . . . ."); *Sieg v. Int'l Envtl. Mgmt., Inc.*, 375 S.W.3d 145, 156 (Mo. App. W.D. 2012) ("the crucial

15

point" of the *Jones* decision was "that the plaintiff had been informed that service failed to reach the defendant").

In this case, the Department's first notice that Prescott had not received the Decision Letter came on November 23, 2011, when Prescott called Toni Davis and asked her if the Decision Letter was still available. Davis responded promptly to Prescott's call: she contacted the post office to determine whether the letter was still available for pick-up, and then called Prescott back to inform him that he could retrieve the Decision Letter from the post office. Prescott picked up the letter the same day, when eight days remained within which to file a petition for AHC review. Prescott does not argue that the Department should have taken additional steps to notify him of the Decision Letter after being notified on November 23, 2011, that he had not received it; indeed, it is arguable that Davis' response to Prescott's November 23 phone call went *beyond* what was required by due process principles. Be that as it may, under the caselaw discussed above, the Department had no obligation to take further action *before* November 23. *See Session*, 417 S.W.3d at 904 (finding no due process violation under *Jones* where Department of Revenue initially sent notice of driver's license suspension by certified mail, but did not re-send the notice by regular mail until after the thirty-day period to petition for judicial review had expired; the Department promptly re-sent the notice after being advised that the certified mailing had been unsuccessful).

Prescott's second Point is denied.[7]

---

[7] Prescott's Point Relied On asserts that a due process violation is established, among other things, by the fact that only eight days remained within which to file a petition for review when he actually received the Decision Letter. He does not cite authority, however, to support an argument that having eight days to file a petition for review violated his due process rights, separate and apart from the adequacy of the Department's efforts to notify him of its decision. We therefore do not address the issue. *See*, *e.g.*, *Blanks v. Fluor Corp.*, 450 S.W.3d 308, 384 (Mo. App. E.D. 2014) ("a party on appeal must develop the issue raised in its point relied on in the argument portion of their brief. Failure to support a

16

**III.**

Prescott's third Point asks that we apply principles of equitable estoppel to toll his time to petition for review. In an affidavit he filed before the AHC, Prescott claimed that Davis "told [him] that while she could not give him legal advice, [Prescott] would have 30 days from the date he received; i.e. picked up, the October 31 [letter] in which to file an appeal." (Davis denied making this statement.) Prescott claims that he was entitled to rely on Davis' statement, and that his filing of his petition for review on December 12, 2011 should therefore be considered timely.[8]

As a general rule, the AHC has no authority to hear claims filed outside of the statutory time limit. *Springfield Park Cent. Hosp. v. Dir. of Revenue*, 643 S.W.2d 599, 600 (Mo. 1983). "Failure to comply with statutory time for appeal in an administrative proceeding results in a lapse of jurisdiction and loss of [the] right of appeal." *Community Fed. Sav.& Loan Assoc. v. Dir. of Revenue*, 752 S.W.2d 794, 799 (Mo. banc 1988).

"Equitable estoppel is normally not applicable against a governmental entity." *Fraternal Order of Police Lodge #2 v. City of St. Joseph*, 8 S.W.3d 257, 263 (Mo. App. W.D. 1999). "[T]he 'doctrine of equitable estoppel is rarely applied in cases involving a governmental entity, and then only to avoid manifest injustice.'" *Lalani v. Dir. of Revenue*, 452 S.W.3d 147, 149 (Mo. banc 2014) (citation omitted). To invoke the doctrine, "the governmental conduct complained of must amount to affirmative misconduct." *Twelve Oaks Motor Inn, Inc. v. Strahan*, 110 S.W.3d

---

point with relevant legal authority or argument beyond conclusory statements preserves nothing for appeal. In such instances, we will deem the issue abandoned." (citations omitted)).

[8] Prescott acknowledges that the AHC itself had no authority to extend or toll the statutory time limitations of § 208.156.8 based on equitable principles. The Department argues that, because we generally address only those issues presented to and decided by the AHC, we cannot consider Prescott's equitable arguments where he concedes that the AHC lacked authority to address them. Given our disposition, we need not resolve this issue.

404, 408 (Mo. App. S.D. 2003) (citation omitted); *see also Adams v. Div. of Emp't Sec.*, 353 S.W.3d 668, 673 (Mo. App. E.D. 2011) ("The doctrine of equitable tolling permits a plaintiff to toll a statute of limitations where 'the defendant has actively misled the plaintiff respecting the cause of action, or where the plaintiff has in some extraordinary way been prevented from asserting his rights . . ." (citation omitted)).

In *Horizons West Properties v. Leachman*, 548 S.W.2d 550 (Mo. banc 1977), the Supreme Court rejected an estoppel argument where a real-property owner contended that an employee of the tax assessor informed the taxpayer "that the assessor would review the assessment, would reduce it substantially, and plaintiff would be notified in time to appeal to the Board of Equalization." *Id.* at 554. Contrary to this claimed representation, the assessor's employee ultimately informed the taxpayer that the assessment would *not* be altered, *after* the time to seek Board of Equalization review had passed. *Id.* at 552. The Supreme Court held that, on these allegations, the circuit court had not erred in rejecting the taxpayer's estoppel argument.

> Plaintiff's theory is, in a nutshell, based on the premise that it had a right to rely on statements of the assessor's agent and therefore had no obligation to follow the statutes providing for review by the Board or the procedures by which to seek that review. The premise is false. Plaintiff had no legal right so to rely and had the obligation to follow the statutes. The court did not err in dismissing Count II.

*Id.* at 554; *see also In re Tort Victims Compensation Fund*, 139 S.W.3d 593, 594-95 (Mo. App. E.D. 2004) (filing of petition for review of AHC decision after the twenty-day statutory limit required dismissal, notwithstanding that the Commission in its notice of final decision "voluntarily but erroneously, informed Claimant . . . that he had the right to appeal . . . within thirty days of the date of decision"); *compare Twelve Oaks*, 110 S.W.3d at 408-09 (finding that equitable estoppel prevented State Tax Commission from dismissing administrative appeal of

18

property valuation as untimely, where Commission's written instructions to taxpayers explicitly provided incorrect date for appeal).

Under this caselaw, Prescott was not entitled to invoke equitable principles to exempt himself from the filing deadlines in § 208.156.8. The Department's Decision Letter accurately and unambiguously informed Prescott, in the language mandated by § 621.055.3, that he had "thirty days from the date of mailing or delivery of this decision, *whichever is earlier*," within which to file his petition for review. Moreover, even according to Prescott's affidavit, Davis' statement concerning the time period in which he could petition for review was prefaced by the caveat that "she could not give him legal advice." The time period within which a petition for AHC review must be filed is a legal issue. Davis' statement – if she in fact made it – is thus best understood as a statement of her personal belief, or a suggestion. It does not constitute the sort of "affirmative misconduct" which could justify the extraordinary action of estopping the State from relying on the explicit filing deadline contained in §§ 208.156.8 and 621.055.3.

We deny Prescott's third Point.[9]

### Conclusion

We affirm the judgment of the circuit court, which affirmed the Administrative Hearing Commission's dismissal of Prescott's petition for review.

_____
Alok Ahuja, Chief Judge

All concur.

---

[9] Prescott's fourth and final Point argues that the AHC erred in entering a summary disposition because genuine disputes existed as to a material issue of fact; namely, whether Davis in fact told Prescott that he had thirty days from his receipt of the Decision Letter within which to petition for review. We have resolved Prescott's third Point, however, on the assumption that his version of events is accurate. Although the parties dispute whether Davis made the statement Prescott attributes to her, that dispute does not involve a *material* factual issue, because resolution of the factual dispute in Prescott's favor would not alter the outcome.