

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

DAWN RENEE FURMAN, )
     Respondent, )
       )
       ) WD83385
v.      )
       )
BOARD OF NURSING HOME ) FILED: July 28, 2020
ADMINISTRATORS,  )
     Appellant. )

**Appeal from the Circuit Court of Cole County**
**The Honorable Daniel R. Green, Judge**

**Before Division Four: Cynthia L. Martin, C.J., and**
**Alok Ahuja and W. Douglas Thomson, JJ.**

The Board of Nursing Home Administrators denied Dawn Renee Furman's application for licensure as a nursing home administrator after finding that she had acted as the administrator of a Missouri assisted living facility for two months without first obtaining a Missouri license. On Furman's application for administrative review, the Administrative Hearing Commission (the "AHC" or "Commission") likewise denied her application. On judicial review, the circuit court found that the AHC had abused its discretion by denying Furman's license application, and reversed the Commission's decision. The Board appeals. We reverse the circuit court's judgment, and reinstate the AHC's decision denying Furman's license application.

## Factual Background

Dawn Furman has been licensed by the State of Illinois as a registered nurse since 1996 and as a nursing home administrator since 2001. Neither license has

ever been disciplined. At the time of the AHC hearing, Furman was employed as Vice President of Clinical and Operations with Saba Healthcare, which manages a number of skilled nursing homes. Furman testified that she was responsible for overseeing several separate facilities. Furman's responsibilities included overseeing the staff and residents of the facilities; ensuring regulatory compliance and the safety of the residents; and supervising the licensed nursing home administrator (the senior management employee) at each facility.

In 2015, Saba Healthcare purchased Brook Chateau, a large assisted living facility in Kansas City. Furman assumed responsibility for Brook Chateau, and the nursing home administrator at the facility "became one of [her] subordinates."

On October 15, 2016, the licensed nursing home administrator for Brook Chateau, Jacqueline Taylor, unexpectedly stopped reporting to work. Furman testified that while Taylor initially gave 30-days' notice of her resignation on October 5, 2016, she left on October 15 without further notice. Furman testified that Brook Chateau had experienced significant turnover in the nursing home administrator position since Saba Healthcare's purchase of the facility; she testified that Taylor was the fifth administrator she had worked with in 2015-2016. Furman also testified that, at the time of Taylor's departure, the facility did not have an assistant administrator. At the time, the facility's license had been placed in "immediate jeopardy" by state regulators based on a complaint, meaning that if the regulatory issues were not promptly resolved, "the State will close the doors of the facility."

On October 20, 2016, the Board received an application from Furman for a Missouri nursing home administrator's license. At the AHC hearing, Furman testified that she had applied for a temporary emergency license at the same time that she submitted her application for full licensure. Although Furman testified that her application for a temporary emergency license was "bundled . . . up" with

2

her application for permanent licensure, and that she had "retained a copy of the full licensure application for [her] own record," she was unable to produce a copy of any temporary emergency license application.

Furman testified at the AHC hearing that "the Board eventually contacted [her] and told [her] that they didn't receive any temporary emergency license application." Furman claimed that "I offered to submit another one at that point" (although she apparently never did so).

Furman e-mailed the Board inquiring about her temporary emergency license application on October 25, 2016. A member of the Board's staff responded the next day, stating that "[a]t this time our office has not received a [temporary emergency license application] for Brook Chateau. You can fax or email to our office." Furman testified that this e-mail was "the last time that [she] kn[e]w anything about this." Although Furman testified that she was aware that the Board had not received her temporary emergency license application in late October 2016, she apparently made no further effort to follow-up with the Board, or submit (or re-submit) an emergency license application.

Furman never received a temporary emergency license from the Board authorizing her to serve as Brook Chateau's nursing home administrator.

On October 31, 2016, Heather Duncan began working at Brook Chateau. Although Duncan was hired to serve as the facility's administrator, she did not have a nursing home administrator's license at the time, and began work at Brook Chateau in a different capacity. On November 5, 2016, Furman e-mailed information to Duncan concerning her application for a nursing home administrator license and a temporary emergency license.

The Board received Duncan's one-page application for a temporary emergency license, along with her application for full licensure, on December 14, 2016 – two months after Taylor's departure, and more than six weeks after Duncan

3

had begun working at Brook Chateau. (Furman testified that Duncan had delayed submitting her license application in order to have additional time to prepare for the licensing examination.) Duncan's emergency license application listed Furman as the "Administrator who is or will be vacating the position," and indicated that Furman would leave that position on December 21, 2016. Duncan's application explained that the reason for her emergency license application was that "Jackie Taylor resigned and did not forfill [*sic*] her 30 day notice. Dawn Renee Furman has been sitting as the administrator." The application indicated that Duncan would "continue as administrator after exam and licensure." In addition to Duncan's signature as the applicant, Furman signed Duncan's emergency license application as the "Facility Authority," and listed her title as "VP Clinical Services."

In her testimony before the AHC, Furman denied that she was identified as Brook Chateau's nursing home administrator in Duncan's temporary emergency license application. Furman testified that she was merely identified in Duncan's emergency license application as Brook Chateau's "administrator," _not_ as its "nursing home administrator." She testified that she executed the form which identified her as Brook Chateau's "administrator" because she "ha[d] administrative responsibilities for that . . . organization." She denied that Duncan's application for an emergency license identified Furman as the "nursing home administrator," or that she "intend[ed] to convey to anyone at any time that [she] w[as] the nursing home administrator." Furman admitted, however, that in the emergency license application which she claimed to have submitted on her own behalf in October 2016, she listed Jacqueline Taylor – Brook Chateau's departed *nursing home administrator* – as the "Administrator who is or will be vacating the position."

After receiving Duncan's temporary emergency license application, Danielle Calvin, a Health Program Representative with the Board, began an investigation. Calvin was concerned that Furman was listed in Duncan's emergency license

4

application as Brook Chateau's existing administrator, even though she was not then licensed in Missouri as a nursing home administrator.

On December 15, 2016, Calvin called Brook Chateau to verify the name of the facility's administrator. A staff member told Calvin that Duncan was the current administrator, and transferred her call to Duncan. Duncan told Calvin that Furman "is and has been the facility's Administrator since the previous Administrator's [*sic*] (Jacqueline Taylor) left." Duncan transferred Calvin's call to Furman. Calvin's written record of the telephone conversation stated that Furman twice confirmed that she had been working as the nursing home administrator for the facility since October 15, 2016 (when Taylor left). When Calvin asked for Furman's Missouri license number, Furman stated that she had her Illinois license and a Missouri temporary emergency license, although she acknowledged to Calvin that she had never received notification from the Board "that any paperwork had been received or approved." Calvin told Furman that the Board had not received or approved a temporary emergency license application for Furman, and that Brook Chateau would need to immediately put in place a fully licensed nursing home administrator.

On March 2, 2017, the Board denied Furman's application for licensure as a nursing home administrator, "based on [Furman] acting or serving as the administrator of Brook Chateau from October 15, 2016 through December 14, 2016 without being properly licensed by the Board."

Furman filed a complaint with the AHC to contest the Board's denial of her license application. After a hearing, the AHC issued a written decision denying Furman's application for a nursing home administrator license. In its decision, the AHC found that Furman acted as a nursing home administrator without a license

5

in violation of § 344.020.[1]  On that basis, the AHC found cause to deny Furman's application under § 344.050.2(6) (for violating a provision of chapter 344 of the Revised Statutes of Missouri).  The AHC found that Furman's testimony "contained internal inconsistencies and was also inconsistent with the documentary evidence and the testimony of the Board's witnesses," and that "the timeline of events belies her claim that she did not act as the nursing home administrator for the facility."  The Commission found that Furman inappropriately "attempt[ed] to minimize her actions" by "focusing on the word 'administrator' on the [temporary emergency license] application," a position the Commission found "disingenuous."  The Commission determined that Furman's unlicensed practice was plainly "contrary to the purpose of the Board's professional licensing laws."  It also noted that § 344.100 defines unlicensed practice as a nursing home administrator as a misdemeanor, "demonstrat[ing] the importance the legislature ascribed to acting without a license."  Based on these considerations, the AHC held that denial of Furman's license application, rather than any lesser sanction, was appropriate.

Furman sought judicial review of the AHC's decision in the Circuit Court of Cole County.  The circuit court issued its amended judgment on November 21, 2019, finding that the Commission abused its discretion in denying Furman's license application.  The circuit court emphasized Furman's nearly twenty-year unblemished history as an Illinois-licensed registered nurse and nursing home administrator.  It also noted that "[t]here is no complaint regarding the competency of [Furman's] professional activities."  Although the court noted that Furman "would have been better served by more aggressively pursuing her Missouri license," it found that "the delay in doing so caused no substantive harm."  It

---

[1]    Statutory citations refer to the 2016 edition of the Revised Statutes of Missouri, updated through the 2019 Cumulative Supplement.

6

ordered the Board to permit Furman to sit for the licensing examination, and if she passed, to issue her a nursing home administrator's license.

The Board appeals.

## Standard of Review

> On appeal from a circuit court's review of an AHC decision, this Court reviews the AHC's decision, not the judgment of the circuit court. In reviewing the commission's decision, the Court may not determine the weight of the evidence or substitute its discretion for that of the administrative body; the Court's function is to determine primarily whether competent and substantial evidence upon the whole record supports the decision, whether the decision is arbitrary, capricious, or unreasonable, and whether the commission abused its discretion. Questions of law, however, are reviewed by this Court *de novo*.

*Prescott v. Mo. Dep't of Soc. Servs.*, 464 S.W.3d 560, 565 (Mo. App. W.D. 2015) (citations and internal quotation marks omitted); *see also*, *e.g.*, *O'Brien v. Dep't of Pub. Safety*, 589 S.W.3d 560, 565 (Mo. 2019). The Commission is the "sole judge of the credibility of witnesses and the weight and value to give to the evidence," and this Court defers to its credibility determinations. *Cash v. Mo. Dep't of Revenue*, 461 S.W.3d 57, 60 (Mo. App. W.D. 2015). The AHC abuses its discretion when its decision "is clearly against the logic of the circumstances then before the [Commission] and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Kerwin v. Mo. Dental Bd.*, 375 S.W.3d 219, 232 (Mo. App. W.D. 2012) (citation and internal quotation marks omitted).

## Discussion

The Board of Nursing Home Administrators is authorized to deny a nursing home administrator's license to any applicant who has acted as the administrator of a Missouri nursing home without the appropriate licensure. Section 344.050.1 provides that the Board "may refuse to issue . . . any . . . license required pursuant to this chapter for one or any combination of causes stated in subsection 2 of this section." (The statute also provides that, "[a]s an alternative to refusal to issue . . .

7

any . . . license, the board may, at its discretion, issue a license which is subject to probation for any one or any combination of causes stated in subsection 2 of this section." *Id.*) As relevant here, § 344.050.2(6) provides that cause for denial of a license includes "[v]iolation of . . . any provision of this chapter." Section 344.020 provides that "[n]o person shall act or serve in the capacity of a nursing home administrator without first procuring a license from the Missouri board of nursing home administrators as provided in sections 344.010 to 344.108." Indeed, as the AHC noted, § 334.100 provides that "[a]ny person who acts or serves in the capacity of a nursing home administrator without being properly licensed by the Missouri board of nursing home administrators as provided in sections 344.010 to 344.100 is guilty of a misdemeanor and, upon conviction, shall be punished as provided by law."

Although she denied it in her sworn testimony before the AHC, on appeal Furman does not challenge the Commission's factual finding that she acted as the administrator of Brook Chateau for two months without having obtained a permanent or temporary Missouri nursing home administrator's license. Nor does Furman dispute that, based on her unauthorized service as Brook Chateau's administrator, the Board and the Commission had sufficient cause to deny her application for a nursing home administrator's license. Furman's sole argument on appeal is that, although it had the *power* to do so, the AHC abused its discretion in denying her application for a nursing home administrator's license, rather than imposing a lesser sanction.

As described above, under the statutory scheme governing nursing home administrators, the Board has discretion to either deny a license or, alternatively, issue a probationary license, where an applicant has violated the provisions of chapter 344. On administrative review of the Board's decision to deny a license, the AHC "exercise[s] the full measure of discretion initially vested with the Board,

8

without deference to the Board's decision." *State Bd. of Registration for the Healing Arts v. Trueblood*, 368 S.W.3d 259, 267 (Mo. App. W.D. 2012); *see also Mo. Real Estate Comm'n v. Held*, 581 S.W.3d 668, 674-75 (Mo. App. W.D. 2019); *Dep't of Soc. Servs. v. Mellas*, 220 S.W.3d 778, 782-83 (Mo. App. W.D. 2007). "[T]he function of the AHC in administrative review proceedings is to render the agency's final decision, exercising the same authority as the underlying agency." *Trueblood*, 368 S.W.3d at 266 & n.4 (collecting cases).

In arguing that the Commission abused its discretion, Furman relies primarily on this Court's decisions in *Boyd v. State Board of Registration for Healing Arts*, 916 S.W.2d 311 (Mo. App. E.D. 1995), and in *Gard v. State Board of Registration for the Healing Arts*, 747 S.W.2d 726 (Mo. App. W.D. 1988). Both cases are plainly distinguishable.

In *Boyd*, the Eastern District reversed the Board of Registration for the Healing Arts' imposition of a six-month suspension on a physician's medical license, holding instead that the Board should have imposed a term of probation on the physician. 916 S.W.2d at 317-18. In *Boyd*, the Court held that the AHC had properly determined that cause for discipline existed based on the physician's practice of medicine in Missouri for approximately two months without a Missouri medical license (after moving from the District of Columbia). *Id.* at 313. While this misconduct is similar to that which Furman was found to have committed, *Boyd* presents a markedly different factual scenario. First, although the Court upheld the AHC's determination that the physician had practiced without a license, it <u>reversed</u> two other findings of cause for discipline made by the Commission. *Id.* at 316. Thus, in *Boyd*, the Court rejected two of the three bases for discipline on which the Commission and the Board had relied.

Further, in *Boyd*, the physician stipulated that she had practiced in Missouri without a Missouri license. *Id.* at 313 ("Dr. Boyd consented to the issuance of an

9

order by the AHC that cause existed for the Board to take disciplinary action against her medical license because she knowingly practiced medicine in Missouri without a Missouri license."). This stands in sharp contrast to the present case, in which Furman denied that she had ever functioned as Brook Chateau's nursing home administrator (despite her attestation that she was the facility's administrator on Duncan's emergency license application, and her confirmation that she was functioning as the facility's administrator when asked by the Board's investigator). Further, in this case Furman was expressly advised by the Board that she had submitted no application for a temporary emergency license in late October 2016; she testified that she had offered to submit a new application; and yet she apparently did nothing to rectify her licensing status until her unlicensed service was discovered by the Board.

In deciding whether Furman should be eligible for licensing, the AHC justifiably placed substantial weight on Furman's unsubstantiated claim that she had in fact submitted an emergency license application, and on her denials that she had acted as Brook Chateau's nursing home administrator (despite her written and oral representations to the contrary). An applicant's failure to acknowledge mistakes, and to accept responsibility for those mistakes, gives important insight into the applicant's attitude toward the regulatory process, and can serve as a powerful predictor of how the applicant will conduct themselves if a license is issued. There is a significant difference between Furman's denials of responsibility, and the physician's acknowledgement that cause for discipline existed in *Boyd*; the difference in the applicant's conduct justifies the different outcomes in the two cases.

*Gard* is similarly distinguishable. In that case, the AHC found cause to discipline a doctor's medical license after the doctor was convicted in California of felony possession and sale of controlled substances and his California medical

license was revoked (although it was later reinstated with a probationary term). *Gard*, 747 S.W.2d at 726-27. After the AHC found cause to discipline the doctor's Missouri license, the Board of Registration for the Healing Arts revoked his license under § 334.100. *Id.* at 728. On appeal, this Court reversed the license revocation. The Court found that the Board had erred by "ignor[ing] the facts and circumstances of appellant's rehabilitation" as established by substantial evidence in the record, and by instead treating "a single subjective fact, that of appellant's California conviction, [as] conclusive in itself." *Id.* at 729, 730; *see also*, *e.g.*, *Brown v. State Bd. of Accountancy*, 588 S.W.3d 519, 526 (Mo. App. E.D. 2019) (agency abused its discretion in imposing discipline without considering the mitigating evidence presented by the licensee). In this case, Furman does not contend that the AHC failed to consider any similar mitigating evidence.

Notably, the Missouri Supreme Court recently distinguished both *Boyd* and *Gard* on the basis that those decisions were necessarily fact-dependent, and were "of little persuasive value" in subsequent license-discipline cases. In *O'Brien v. Department of Public Safety*, 589 S.W.3d 560 (Mo. 2019), the Court concluded that a decision by the Department of Public Safety to discipline a police officer's license was supported by substantial evidence. *Id.* at 566. The Court continued by observing:

> Nothing in *Boyd v. State Board of Registration for the Healing Arts*, 916 S.W.2d 311 (Mo. App. 1995), [or] *Gard v. State Board of Registration for the Healing Arts*, 747 S.W.2d 726 (Mo. App. 1988), . . . compels a contrary conclusion. In such a highly fact-dependent analysis as this must necessarily be, such cases – which involve dissimilar professions and dissimilar crimes . . ., in which different agency heads exercised their discretion in wholly dissimilar environments in order to meet their shared obligation to adequately safeguard the public – are of little persuasive value.

*Id.* at 566 n.10.

In this case, the Commission had evidence that Furman knowingly acted as Brook Chateau's nursing home administrator without a Missouri license for almost two full months.  Although Furman claimed that she had submitted a temporary emergency license application, she could never produce a copy of that application, even though she claimed that she had submitted it together with her application for full licensure – of which she _had_ retained a copy.  Furman admitted that she had been told by the Board in late October 2016 that it had not received an emergency license application from her, yet she did nothing thereafter to rectify the situation.  Furman also denied under oath that she had, in fact, acted as Brook Chateau's nursing home administrator, even though she had admitted acting in that capacity to a Board investigator, and had signed Duncan's emergency license application (which identified Furman as the facility's current administrator).  Furman then offered "disingenuous" explanations to attempt to avoid the clear implications of the license application she had signed.  (Notably, on appeal Furman has abandoned her earlier denials that she had acted as nursing home administrator at Brook Chateau, or that she ever told the Board that she had acted as nursing home administrator.)  The Commission could fairly conclude that Furman's actions deliberately flouted Missouri's licensing scheme, and justified the denial of her license application.

Furman emphasizes her nearly twenty years' experience as both a registered nurse and a nursing home administrator licensed under Illinois law, and her lack of any professional discipline during her career.  She also emphasizes that there was no evidence that her actions in the Fall of 2016 endangered any of the residents of Brook Chateau, or that she was unqualified to oversee the facility's operations.

We recognize that there are circumstances in this case which pull in opposing directions:  on the one hand, evidence of Furman's deliberate disregard of Missouri's licensing scheme for nursing home administrators, and her offering of hyper-technical and untruthful testimony to avoid responsibility for her actions; on the

12

other hand, evidence of Furman's long-standing, unblemished service in senior nursing-home management positions, the lack of any direct effect on patient safety, and the fact that Furman was responding to unexpected and difficult circumstances at Brook Chateau. The Commission's decision makes clear that it weighed these countervailing considerations, and chose the responsive action it deemed most appropriate. We cannot find an abuse of discretion in these circumstances. As the Missouri Supreme Court emphasized in *O'Brien*:

> The authority to choose, after careful deliberation, between two reasonable alternatives, both of which are supported by the evidence, is the essence of discretion, and this Court will not substitute its choice for the choice made by the agency . . . in which Missouri statutes expressly vest that discretion.

589 S.W.3d at 566 n.11. The question is not whether this Court would have arrived at the same conclusion as the Commission, but instead whether the Commission's decision is so arbitrary and unreasonable as to shock our sense of justice and indicate a lack of careful consideration. Our answer to the latter question is "no."

### Conclusion

We reverse the judgment of the circuit court, and reinstate the decision of the Administrative Hearing Commission denying Furman's application for a nursing home administrator's license.

_____
Alok Ahuja, Judge

All concur.

13